Lorenzo Jiménez Soto y su esposa Natalia Solá Caballero, peticionarios, *v.* La Corte de Distrito de Humacao, Hon. Rafael Arjona Siaca, Juez, demandada.

No. 909.—*Sometido:* Mayo 29, 1933. *Resuelto:* Diciembre 15, 1933.

922

*González ˙Fagundo & González, Jr.* y *Andrés Mena,* abogados de los peticionarios; *R. Cintrón Lastra,* abogado del demandante en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Existe pendiente en la Corte de Distrito de Humacao un procedimiento sumario hipotecario iniciado por Miguel J. Arsuaga para ejecutar una hipoteca constituída por Lorenzo Jiménez y su esposa Natalia Solá en garantía de un préstamo de cinco mil dólares que Arsuaga les hiciera.

Requeridos los deudores comparecieron dentro del procedimiento sumario alegando que el propio Miguel J. Arsuaga siguió en la Corte de Distrito de San Juan contra los esposos Jiménez-Solá una acción por el procedimiento ordinario en cobro del mismo crédito hipotecario que se ha relacionado, habiéndose dictado sentencia a su favor que se ejecutó por el Márshal de la Corte de Distrito de Humacao,

vendiendo en pública subasta la finca hipotecada y adjudicándola al propio demandante Arsuaga por precio de dos mil dólares en pago parcial de su crédito; que después el referido márshal puso a Arsuaga en posesión de la finca, en cuya posesión continúa, teniéndola actualmente dada en arrendamiento; que a virtud del remate y adjudicación al demandante de la finca hipotecada, ha quedado de hecho y de derecho extinguida la hipoteca a su favor constituída sobre dicho inmueble y por consiguiente no procede la continuación del procedimiento hipotecario instado en Humacao, de acuerdo con lo que dispone el artículo 175 del Reglamento Hipotecario, considerando los hechos relatados comprendidos en el caso tercero de los regulados por dicho artículo.

La corte oyó al acreedor y al deudor y resolvió la cuestión planteada por el último, como sigue:

"La acción ante la Corte de Distrito de San Juan en cobro de crédito hipotecario, aun cuando por la vía ordinaria, dirigida contra finca ubicada en Caguas, es absolutamente nula. También lo es la sentencia dictada en dicha ocasión por la expresada Corte, y la orden que ésta dió para su ejecución, así como el cumplimiento de la misma.

"Por esta razón, así como porque la misma tiende a interrumpir indebidamente, sin ser uno de los casos previstos al efecto por la ley, el procedimiento hipotecario de autos, se declara sin lugar la moción de los demandados . . . "

No conforme el deudor recurrió en *certiorari* para ante esta Corte Suprema. Se expidió el auto y los procedimientos se encuentran ante nos.

■■ Sostiene en primer término la Corte de Distrito de Humacao que el pleito tramitado en la Corte de Distrito de San Juan es nulo en su totalidad.

Aunque no consta que se haya resuelto por esta Corte Suprema un caso exactamente igual al presente, existe jurisprudencia suya que sienta las bases para una decisión contraria a la nulidad.

El caso de *Porto Rican Leaf Tobacco Co.* v. *Ereño*, 16 D.P.R. 100, fué uno en el que se demandó a Ereño ante la

Corte de Distrito de Arecibo por la vía ordinaria en cobro de siete mil quinientos dólares garantizados con hipoteca, y en él, hablando por la corte, el Juez Asociado Sr. Figueras se expresó así:

"No cabe duda de que la corte de Arecibo tenía competencia para conocer de este litigio, según el artículo 170 del Reglamento para la ejecución de la Ley Hipotecaria porque en su distrito radican todos los bienes hipotecados y en este caso no se admite sumisión en contrario.

"Pero aun suponiendo de exclusiva aplicación en este punto el Código de Enjuiciamiento Civil por no haberse seguido en este caso el procedimiento sumarísimo de la Ley Hipotecaria, tendremos que aplicar el artículo 77 de aquel Código y entonces hay que convenir en que los demandados se sometieron a la corte de Arecibo, toda vez que pidieron prórroga para contestar la demanda cuando su primera gestión debió ser que el juicio se celebrase en la corte que creían correspondiente.

"Aunque los otorgantes de la escritura de préstamo eligiesen la ciudad de San Juan y acordaran someterse a sus tribunales ordinarios para todos los actos y reclamaciones que el contrato originase, esto no es óbice u obstáculo insuperable para que ellos se sometiesen espontáneamente a otra corte de jurisdicción como ha sucedido en este caso."

Y en el caso de *Carbonell* v. *Registrador,* 17 D.P.R. 148, 151, la corte por medio de su Juez Presidente Sr. Hernández, dijo:

"En cuanto al segundo defecto consistente en no haberse acreditado que la Corte Municipal de San Germán adquiriera jurisdicción para conocer del pleito y dictar sentencia, opinamos que dicha corte, según el artículo 98 del Código de Enjuiciamiento Civil, desde que expiró el término de la publicación de edictos ordenando la citación del demandado, adquirió jurisdicción sobre ambas partes y quedó sometido a ella todo procedimiento subsiguiente.

"Con arreglo al artículo 75 del Código citado, los pleitos para recobrar la posesión de bienes raíces o de una propiedad o interés en la misma, o para determinar en cualquier forma dicho derecho o interés, como sucede en el pleito que motivó la escritura de 28 de abril de 1910, deben sustanciarse en el distrito en que radique el objeto de la acción, que en el presente caso radica en Cabo Rojo y no

en San Germán; pero como el artículo 82 preceptúa que si el distrito en que se establece la demanda no es el en que deba seguirse el juicio, podrá, sin embargo, continuarse en aquél a menos que el demandado al comparecer a contestar o a formular excepciones, presente una declaración jurada y fundada y pida por escrito que el juicio se celebre en el distrito correspondiente, no habiéndose llenado estos requisitos, debemos estimar que la corte de San Germán tuvo jurisdicción para conocer y sentenciar el pleito de que se trata. La de Cabo Rojo no podía separarse del conocimiento del asunto, de oficio y sin gestión del demandado.''

Parece lo lógico que si cabe recurrir al procedimiento ordinario para el cobro de una deuda garantizada con hipoteca, rijan en un todo las reglas generales aplicables a tal procedimiento. La disposición del artículo 170 del Reglamento para la Ejecución de la Ley Hipotecaria acerca de que será juez competente el del lugar en que radiquen los bienes asegurados sin que se admita sumisión en contrario, se explica perfectamente dada la naturaleza del procedimiento sumario a que se refiere, pero deja de tener efecto en cuanto dicho procedimiento se abandona como se abandonó por el acreedor en este caso cuando acudió a la Corte de Distrito de San Juan.

 El otro fundamento de la resolución de la Corte de Distrito que estamos revisando fué el de que el procedimiento sumario no podía interrumpirse por la causa alegada.

Dice el artículo 175 del Reglamento Hipotecario, en lo pertinente:

''Art. 175. Los procedimientos sumarios a que se refiere esta Sección, no podrán suspenderse por medio de incidentes ni por otro alguno, a instancia del deudor, del tercer poseedor, ni de ningún otro que se presente como interesado, salvo en los siguientes casos:

''1º. . . . . . . . . . . .

''2º. . . . . . . . . . . .

''3º. Si se presentase certificado del Registrador, expresivo de quedar cancelada la hipoteca en virtud de la cual se proceda, o copia auténtica de la escritura pública de canelación de la misma, con la nota de presentación en alguno de los Registros en donde se haya de tomar razón de ella, otorgada por el actor o por sus causantes, o

causahabientes, acreditándose también documentalmente el título del transmitente en su caso.

" * * * * * * *

" * * * * * * *

"En el caso tercero el Juez convocará a las partes a una comparecencia, debiendo mediar cuatro días desde la citación; oirá a las partes, admitirá los documentos que presenten, y acordará en forma de auto lo que estime procedente dentro del segundo día.

"Será apelable en ambos efectos este auto cuando ordenare la suspensión."

Es cierto que no le fué dable al deudor presentar a la corte de distrito el certificado del registrador expresivo de haber quedado cancelada la hipoteca, pero le presentó algo equivalente en verdad, ya que llevó a su conocimiento la escritura de venta judicial a favor de Arsuaga otorgada por el Márshal de la Corte de Distrito de Humacao en la ejecución de la sentencia dictada por la Corte de Distrito de San Juan en el pleito que ante ella siguiera Arsuaga contra los esposos Jiménez Solá. La finca vendida es la misma hipotecada, quedando desde el momento de la venta confundidos en una sola persona los caracteres de acreedor y dueño. El derecho de hipoteca se esfumó así dentro del de dominio que es pleno, quedando extinguido.

Dice Morell en sus Comentarios a la Ley Hipotecaria, vol. 3, pág. 433:

"Así, cuando el deudor cede a su acreedor la finca hipotecada en pago del crédito, o se la vende, computando éste en el importe del precio, se refunden en una sola persona los caracteres de acreedor y deudor, de dueño de la finca y dueño de la hipoteca, extinguiéndose ésta, por tanto, por ministerio de la ley. A este caso, en forma más o menos variada, se refieren las Resoluciones de 31 de marzo de 1879, 28 de marzo de 1889, 19 de julio de 1893, 6 de diciembre de 1897, 14 de diciembre de 1899 y 19 de enero de 1914."

 No hay duda, pues, de que al presentarse en el registro la escritura de venta de que se trata, al inscribir el dominio de la finca a favor de Arsuaga, deberá el registrador cancelar la hipoteca inscrita previamente a favor suyo, de

acuerdo con lo que dispone el artículo 82, párrafo segundo, de la Ley Hipotecaria, tal como quedó enmendado en 1923, Leyes de 1923, pág. 219, a saber:

"No obstante lo dispuesto en el párrafo anterior, las inscripciones o anotaciones a que el mismo se refiere, podrán cancelarse sin los requisitos expresados, cuando quede extinguido el derecho inscrito por declaración de la ley, o resulte así de la misma escritura inscrita."

*A virtud de todo lo expuesto, debe, a nuestro juicio, anularse la orden de 29 de abril de 1933 de que se quejan los peticionarios y devolverse los autos reclamados a la corte de distrito de su origen para ulteriores procedimientos de conformidad con la ley y los principios establecidos en esta opinión.*

Los Jueces Asociados Señores Wolf y Aldrey disintieron.*