Maritza Colón, como madre con patria potestad y en representación de sus hijos menores Belencita, Maritza y Antonio Ayuso Colón, peticionarios, *v*. Tribunal Superior, Sala de San Juan, Hon. Plinio Pérez Marrero, Juez, recurrido, *v*. Tribunal Superior, Sala de Caguas, Hon. J. Villares Rodríguez, Juez, recurrido; Lcdo. Antonio Ayuso Valdivieso y su esposa Iris Mieres, interventores.

*Números:* O-68-306, O-68-307      *Resueltos:* 27 de marzo de 1969

108

*Francisco Ponsa Feliú, Álvaro R. Calderón, Jr., Rieckehoff, Calderón, Vargas & Arroyo*, abogados de los peticionarios; *Benjamín Ortiz, Adolfo Mieres Calimano* y *Arnaldo Sánchez Recio*, abogados de los interventores.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

A solicitud de la Sra. Maritza Colón, madre con patria potestad en representación de sus hijos menores Belencita, Maritza y Antonio Ayuso Colón, expedimos el presente auto de *certiorari*, recurso O-68-306, para revisar un dictamen de la Sala de San Juan del Tribunal Superior, Hon. Plinio Pérez Marrero, Juez, por el cual se negó a continuar los procedimientos en el caso Civil R.F. 68-1922 de dicha Sala, sobre Declaración de Incapacidad y Nombramiento de Tutor.

A solicitud de los mismos peticionarios expedimos el presente auto de *certiorari*, recurso O-68-307, para revisar un fallo de la Sala de Caguas del Tribunal Superior, Hon. José A. Villares Rodríguez, Juez, en virtud del cual decretó la incapacidad del Lcdo. Antonio Ayuso Valdivieso para gobernar su persona y administrar sus bienes, y nombró tutora del incapacitado a su esposa la Sra. Iris Mieres de Ayuso. Ante las cuestiones suscitadas en estos recursos, es necesario una exposición de los procedimientos en el Tribunal Superior.

En 15 de julio de 1968, la Sra. Maritza Colón, madre con patria potestad en representación de sus hijos menores Be-

lencita, Maritza y Antonio Ayuso Colón, radicó solicitud en la Sala de San Juan del Tribunal Superior, caso R.F. 68-1922, interesando la declaración de incapacidad del Lcdo. Antonio Ayuso Valdivieso, y el nombramiento de su hermana de doble vínculo Sra. Juanita Ayuso Valdivieso como su tutora. Aparte de las alegaciones pertinentes al estado de salud del Sr. Ayuso, se alegó que los menores peticionarios son nietos del Lcdo. Ayuso, hijos de su único hijo ya fallecido Antonio Ayuso Molinari; que el Lcdo. Ayuso es casado con la Sra. Iris Mieres, de cuyo matrimonio han procreado un hijo de nombre Antonio Ayuso Mieres; que el Lcdo. Antonio Ayuso Valdivieso es dueño de cuantiosos bienes y empresas que en su mayoría son de carácter privativo, aunque en parte también de carácter ganancial en su matrimonio con la Sra. Iris Mieres. La alegación quinta de la solicitud textualmente lee así:

"Alegan igualmente los peticionarios que la actual cónyuge de Antonio Ayuso Valdivieso, señora Iris Mieres de Ayuso, tiene intereses opuestos y en conflicto con el mencionado Antonio Ayuso Valdivieso y con los peticionarios en su capacidad de herederos forzosos de Antonio Ayuso Valdivieso; así como también alegan los peticionarios que sus derechos como tales herederos forzosos están en conflicto con los del único otro heredero forzoso del mencionado Antonio Ayuso Valdivieso, su hijo el mencionado Antonio Ayuso Mieres, quien es menor de edad; y que Antonio Ayuso Valdivieso no tiene otros hijos mayores de edad, ni padre, ni madre, ni abuelos, por haber éstos fallecido."

Se alegó además que la Sra. Iris Mieres, conociendo el estado de incapacidad física y mental de su esposo y facultada por ley para hacer la solicitud de incapacidad, no había tomado acción alguna en tal sentido y había asumido ella misma la administración de los bienes; y que existiendo los intereses opuestos y en conflicto alegados en el párrafo quinto anteriormente transcrito, no procedía el nombramiento de la cónyuge Sra. Mieres como tutora del Lcdo. Ayuso y pro-

cedía que fuera nombrada en tal capacidad la Sra. Juanita Ayuso Valdivieso, hermana de éste.

La anterior solicitud de declaración de incapacidad y nombramiento de tutor fue notificada al Lcdo. Antonio Ayuso Valdivieso, a su esposa Sra. Iris Mieres de Ayuso y al Fiscal del Tribunal Superior, Sala de San Juan, en 18 de julio de 1968.

En 24 de julio comparecieron Don Antonio Ayuso y su esposa Sra. Iris Mieres representados por los abogados Lcdos. Luis R. Polo, Jorge Luis Córdova Díaz y Adolfo Mieres Calimano, y radicaron oposición a la solicitud antes dicha. Aceptaron la existencia de cuantiosos bienes pero alegaron que eran en su mayoría de carácter ganancial en su actual matrimonio; negaron el párrafo quinto anteriormente transcrito excepto en lo referente a la no existencia de otro descendientes o ascendientes del Lcdo. Ayuso, y negaron las demás alegaciones en torno al conflicto de interés entre los menores peticionarios y la cónyuge Sra. Iris Mieres, en lo que respecta al nombramiento de un tutor.

El tribunal señaló el caso para ser visto el día 5 de septiembre de 1968. En 5 de agosto de 1968 los menores peticionarios comparecieron en moción para que el tribunal ordenara que el Lcdo. Antonio Ayuso Valdivieso fuera sometido a examen médico-siquiátrico ante un panel de tres siquiatras que designaría el tribunal. Esta moción fue señalada para ser discutida el 30 de agosto de 1968. De la minuta de este día, (no hay transcripción taquigráfica de la vista), surge que en la audiencia ya señalada para el 5 de septiembre se oirían los peritos siquiatras traídos por la parte promovida, y de determinarse que la prueba era insuficiente, se señalaría nueva vista para oir otros peritos.

En septiembre 6, 1968, se celebró la vista con la asistencia del fiscal. El récord taquigráfico de la misma demuestra que el tribunal oyó la declaración extensa del siquiatra Dr. Manuel Rodríguez Pérez, traído por los propios querellados.

La declaración del facultativo tendió a demostrar que el Sr. Ayuso estaba incapacitado para regir su persona y bienes, y su abogado Lcdo. Córdova Díaz expresó que la prueba era suficiente para que se le declarara incapacitado. Al insistir los peticionarios menores en que el Sr. Ayuso fuera examinado por otros siquiatras, así se dispuso por el tribunal, designándose a tal efecto al Dr. Rafael Padró. La orden fue que las partes se comunicarían con el Dr. Padró a fin de que éste realizara los exámenes pertinentes e informarían al tribunal cuando estuvieren listos para un nuevo señalamiento. El 28 de octubre de 1968 el tribunal, a instancia propia, señaló la vista del caso para el 21 del próximo noviembre. Hasta aquí esta primera etapa de los procedimientos ante la Sala de San Juan.

En 30 de octubre de 1968 la Sra. Iris Mieres de Ayuso compareció a la Sala de Caguas del Tribunal Superior representada por el Lcdo. Arnaldo Sánchez Recio, caso civil CS-68-7576, en solicitud de Declaración de Incapacidad y Nombramiento de Tutor. Aparte de las alegaciones sobre el estado mental de su esposo Lcdo. Antonio Ayuso, la existencia de bienes detallados en un inventario unido a la petición, y la imposibilidad de él para regir su persona y administrar éstos, la peticionaria alegó haber contraído matrimonio con Don Antonio Ayuso el 25 de mayo de 1946 en el cual procrearon un único hijo llamado Antonio Avelino Ayuso Mieres, de 19 años de edad; que debido al estado mental del Lcdo. Ayuso procedía el nombramiento de un tutor; que la peticionaria no estaba comprendida dentro de ninguna de las incapacidades para ser tutora prescritas por ley, y que ella era la llamada en primer término a asumir el cargo. Suplicó que se declarara la incapacidad de su esposo y se la nombrara tutora. La solicitud fue notificada al Lcdo. Antonio Ayuso Valdivieso y al Fiscal de la Sala de Caguas el día 30 de octubre de 1968.

En este día la Sala de Caguas oyó a las partes con la asistencia del fiscal. La peticionaria produjo el testimonio de los siquiatras Drs. Manuel Rodríguez Pérez y Arturo Flores Gallardo sobre el estado mental del Lcdo. Ayuso. El propio Don Antonio Ayuso declaró en favor de la solicitud y en favor de que su esposa la Sra. Iris Mieres fuera nombrada su tutora. (T.E. págs. 30–36.)

En 1ro. de noviembre de 1968 la Sala de Caguas dictó resolución y declaró a Don Antonio Ayuso Valdivieso incapacitado para gobernar su persona y administrar sus bienes. En su consecuencia nombró tutora a su esposa Sra. Iris Mieres de Ayuso, debiendo ésta prestar una fianza de $50,000 para asegurar el buen resultado de su gestión. En 8 de noviembre la Sra. Mieres aceptó el cargo. En igual fecha el juez aprobó su fianza.

El 13 de noviembre la Sra. Maritza Colón, en representación de sus menores hijos, compareció a la Sala de Caguas en (1) solicitud de intervención y (2) moción de reconsideración. En la primera alegó que sin oírlos, la Sala había adjudicado dos cuestiones en las cuales tenían interés y que estaban planteadas ante la Sala de San Juan del Tribunal Superior y que la anterior resolución de 1ro. de noviembre afectaba directamente sus intereses sin que hubieran estado representados en los procedimientos. En la moción de reconsideración hicieron historia del procedimiento pendiente ante la Sala de San Juan y pidieron que los procedimientos ante la Sala de Caguas debían ser reconsiderados, dejados sin efecto y anulados (a) porque tratándose de un asunto que ya tenía carácter de contencioso ante la Sala de San Juan el mismo no podía verse ni adjudicarse *ex parte* a espaldas de los comparecientes; (b) porque dichos asuntos en controversia estaban ya bajo la consideración de la Sala de San Juan, que era la Sala competente, con conocimiento y anuencia de todas las partes inclusive la peticionaria Sra. Mieres; (c) porque estando dichos procedimientos pendientes ante la Sala de San

Juan, la de Caguas no tenía facultad en ley para asumir jurisdicción y autoridad sobre el asunto a resolver, frustrando así las funciones de la Sala de San Juan y, (d) porque aunque la Sala de Caguas tuviera facultad en ley no debía sancionar y aprobar la práctica llevada a cabo en este caso.

En 18 de noviembre la Sala de Caguas dictó resolución declarando sin lugar la moción de reconsideración, por el fundamento de que lo que se interesaba en la Sala de San Juan, la declaración de incapacidad y el nombramiento de un tutor del Sr. Ayuso, ya se había decretado en Caguas. En cuanto a la solicitud de intervención, la intervención fue concedida, expresando la Sala que no tenía objeción a que los menores intervinieran y alegaran lo que en derecho procediere.

El mismo día, 18 de noviembre de 1968, los menores comparecieron ante la Sala de San Juan en escrito titulado "Moción Informativa", dando cuenta de lo ocurrido en Caguas. Acompañaron copias de sus mociones de intervención, de reconsideración, y de la resolución del tribunal de Caguas sobre las mismas.

El 21 de noviembre tuvo lugar en San Juan la vista previamente señalada. La Sra. Mieres y su esposo Don Antonio Ayuso estuvieron representados por sus abogados Lcdos. Luis R. Polo, Córdova Díaz y Mieres Calimano. Ante la situación en los autos, la Sala dictaminó en corte abierta (T.E. págs. 8 y 10), dando por terminada su actuación en el asunto. Tomó otras providencias que no serán objeto de consideración en los presentes recursos.

Hasta aquí los hechos.

Las cuestiones suscitadas ante nos son las mismas planteadas a las respectivas Salas del Tribunal Superior, ya expuestas anteriormente.

En vista de que los Interventores Sres. Ayuso Mieres levantan ante nos, en lo que respecta al recurso O-68-307, que

no hay función revisora, y siendo este planteamiento una impugnación a nuestra facultad y poder como Tribunal de 2da. Instancia para conocer del asunto y resolverlo, debemos considerar dicho planteamiento antes de continuar en los méritos.

Invocan los interventores a este respecto, lo que dispone el Art. 185 del Código Civil, ed. 1930:

"Contra los autos que pongan término al expediente de incapacidad, podrán los interesados deducir demanda ordinaria por el procedimiento del juicio oral y público."

Estatuye el Art. 184 que le precede, que:

"La declaración de incapacidad deberá hacerse *sumariamente* y mediante comparecencia verbal ante la corte de distrito." (¹) (Énfasis nuestro.)

En *Solá* v. *Solá,* 30 D.P.R. 758, decidido en el año 1922, afrontamos un planteamiento similar al que ahora se hace, basado en el Art. 185. En ese caso la entonces Corte de Distrito de Humacao declaró incapacitada a determinada persona a causa de demencia. Se *apeló* para ante este Tribunal el fallo que declaró la incapacidad. Solicitada la desestimación de la apelación, el Tribunal concedió la desestimación. El caso se resolvió fundamentalmente bajo el principio de que siendo el recurso de apelación de naturaleza estatutaria, la apelación en ese caso no estaba autorizada por ninguna de las disposiciones del entonces vigente Art. 295 del Código de Enjuiciamiento Civil. Dijimos que este artículo clasificaba la apelación en tres grupos: el primero se refería a sentencias *definitivas* en pleitos o procedimientos comenzados en las propias Cortes de Distrito; el segundo a sentencias dictadas por

---

(¹) Hasta cierto punto estos Arts. 185 y 184 guardan semejanza con aquellos otros, el 128 de la Ley Hipotecaria y el 175 de su Reglamento referentes al procedimiento *sumario* hipotecario, en que normalmente, una vez comenzado, no admite suspensión alguna excepto en determinados casos especificados, y en que se pone a disposición del deudor el juicio ordinario que corresponda para ventilar las reclamaciones de éste.

dichas Cortes en grado de apelación, y el tercero a ciertas resoluciones que expresamente se mencionaban. (2)

Resolvimos que el fallo decretando la incapacidad no caía ni en el segundo ni en el tercer grupo comprendido en el Art. 295. En cuanto a si estaba o no comprendido en el primer grupo, una sentencia definitiva, dijimos que la declaración de incapacidad no lo era porque a menos que el auto se consintiera el procedimiento continuaba en la misma corte de distrito con las garantías de un juicio más amplio conforme a lo dispuesto en el Art. 185.

Si bien el caso de *Solá* se resolvió bajo una aplicación literal del Art. 295, el mismo contiene varias citas de Manresa y de Scaevola que nos ayudan a comprender la razón de ser del Art. 185. Explica Scaevola en las citas aludidas que el Código, al conceder el derecho de promover el juicio ordinario (se refiere al Art. 185) desproveía de la autoridad de lo juzgado al auto que declaraba la incapacidad. No es que le reconociera, dice, un carácter interino. Dicha resolución causaba estado en tanto se consintiera, es decir, mientras no se dedujera la demanda de juicio ordinario. El recurso de casación era improcedente para el caso puesto que pudiéndose alterar el auto del juzgado por la sentencia que recayera en el pleito que se ventilara, carecía la primera de las resoluciones enunciadas del *carácter definitivo* que requería la Ley de Enjuiciamiento Civil. Sostuvimos, pues, en *Solá* v. *Solá*, que la resolución decretando la incapacidad no es apelable y desestimamos la apelación.

---

(2) De acuerdo con el párrafo 3 del Art. 295, estas resoluciones expresamente mencionadas para lo cual se concedía apelación eran: una providencia concediendo o denegando un nuevo juicio; concediendo o anulando un *injunction*; negándose a conceder o anular un *injunction*; anulando o negándose a anular un embargo; concediéndose o negándose a conceder un cambio de lugar para la celebración de un juicio; una providencia especial dictada después de una sentencia definitiva; una sentencia interlocutoria en pleito sobre partición de propiedad real.

En *Ex parte Antoni*, 42 D.P.R. 785, resuelto en 1931, se trataba de la apelación de una resolución nombrando un tutor. Se solicitó, bajo la autoridad de *Solá v. Solá*, la desestimación de la apelación y nos negamos a desestimar. Se distinguió el caso a base de que en el de *Solá* se trataba de la declaración de incapacidad y se tuvo muy en cuenta el Art. 185 del Código Civil. En éste se trataba de una resolución sobre nombramiento de tutor únicamente. Sostuvimos que las resoluciones de nombramiento de tutor eran apelables de acuerdo con lo dispuesto en el inciso 1 del Art. 295 del Código de Enjuiciamiento Civil. De hecho, lo resuelto en *Ex parte Antoni* dejó sin efecto el caso de *Solá* porque no existe la distinción en los procedimientos que en *Antoni* se menciona.

En efecto, poco después, en 1932, en *Hernández v. Hernández*, 43 D.P.R. 723 (1932), el Tribunal restituyó en toda su fuerza la decisión de *Solá*. Dijimos en este caso en forma inequívoca, que en ausencia de estatuto que concediera el derecho de apelación, no cabía apelar contra una resolución nombrándole tutor a una persona declarada incapaz. El fundamento fue que el nombramiento de tutor es una consecuencia de la incapacidad, la cual tiene que ser declarada como paso preliminar para la designación de una persona que legalmente represente al incapaz; y que el verdadero objetivo que se persigue con la declaración de incapacidad es el nombramiento de un tutor. Como en *Solá*, en este caso de *Hernández* desestimamos la apelación.

Los casos mencionados se resolvieron en 1922, 1931 y 1932. Para esa época la revisión mediante *certiorari* cubría un ámbito sumamente limitado. Hoy el *certiorari* cubre una esfera más amplia como mecanismo de revisión desde que ampliamos su alcance comenzando con los casos de *Pérez v. Tribunal de Distrito*, 69 D.P.R. 4 (1948); *Blanes v. Tribunal de Distrito*, 69 D.P.R. 113 (1948); *Camacho v. Corte*, 69 D.P.R. 738 (1949); y luego *Borinquen Furniture v. Tribl.*

*de Distrito*, 78 D.P.R. 901 (1956) ; *Pueblo* v. *Tribl. Superior*, 81 D.P.R. 763 (1960).

■ Aparte de lo anteriormente expresado, dispone la Sec. 14 de la Ley Orgánica del Poder Judicial vigente—Ley Núm. 11 de 24 de julio de 1952—en su inciso (e), según dicha sección fue enmendada por la Ley Núm. 115 de 26 de junio de 1958, que "Cualquier *resolución* que dicte el Tribunal Superior podrá ser revisada por el Tribunal Supremo mediante *certiorari* a ser librado a su discreción, y de ningún otro modo." Debemos resolver que expedimos los autos de *certiorari* con facultad para ello, y tenemos poder en ley para conocer y resolver estos recursos. Veamos los méritos.

Dispone la Sec. 2 del Art. V de la Constitución del Estado Libre Asociado de Puerto Rico que "Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a *jurisdicción*, funcionamiento y administración. . . ." Se faculta a la Asamblea Legislativa para crear y suprimir tribunales, con excepción del Tribunal Supremo, en forma compatible con la anterior disposición constitucional y determinar su competencia y organización.

La Ley Orgánica del Poder Judicial de Puerto Rico aprobada bajo el anterior Artículo constitucional—Ley Núm. 11 de 24 de julio de 1952—dispone en su Sec. 1 que el poder judicial del Estado Libre Asociado de Puerto Rico reside en un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración, compuesto por un Tribunal General de Justicia. Se dispone que el Estado Libre Asociado de Puerto Rico queda constituido en un solo distrito judicial, sobre todo el cual el Tribunal General de Justicia ejerce su poder y autoridad.

Forman el Tribunal General de Justicia un Tribunal Supremo de última instancia, y un Tribunal de Primera Instancia. El Tribunal de Primera Instancia, conforme a

lo que dispone la Sec. 9 de la Ley, se compone de dos Secciones: (a) un Tribunal Superior y (b) un Tribunal de Distrito. Estatuye la Sec. 10 que le sigue que el Tribunal de Primera Instancia es un tribunal de jurisdicción original general, "con autoridad para actuar a nombre y por la autoridad del Estado Libre Asociado de Puerto Rico, en todo procedimiento civil o criminal." (3)

Constituida toda la demarcación geográfica de Puerto Rico en un solo distrito judicial, era de rigor que para la ordenada distribución y decisión de los asuntos judiciales a través de todo el país el Legislador estableciera ciertas normas. Dispuso para esa ordenada distribución de los asuntos, que el Tribunal Superior tendría Salas y celebraría sesiones en determinadas ciudades de Puerto Rico, las mismas ciudades en que bajo la legislación anterior existía un Tribunal de Distrito (hoy Superior)—Sec. 11. Para esa ordenada distribución de los asuntos judiciales dispuso el Legislador, además, que toda acción civil o criminal se presentaría en aquella Sala del tribunal situada en el territorio en que la misma hubiese sido radicada bajo la legislación anterior vigente al aprobarse la presente Ley Orgánica Judicial— Sec. 10.

Al determinar la competencia del Tribunal Superior dispuso la Ley, en su Sec. 13, que en lo civil dicha competencia cubriría: ". . . (4) . . . [T]odo recurso, acción y procedimiento, incluyendo testamentarías, divorcios, y recursos legales especiales y extraordinarios, en relación con los cuales el Tribunal de Distrito de Puerto Rico tenía jurisdicción para la fecha en que esta Ley entre en vigor."

El Art. 180 del Código Civil, Ed. 1930, dispone que "(n)o se puede nombrar tutor a los locos, dementes y sordomudos

---

(3) Cf. *Suliveres* v. *Arjona*, 76 D.P.R. 917 (1954) ; *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 504, 509 (1958) ; *Rodríguez* v. *Registrador*, 75 D.P.R. 712 (1953) ; *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 140 (1961).

mayores de edad, sin que preceda la declaración hecha por la *corte de distrito de su domicilio*, de que son incapaces para administrar sus bienes." (Énfasis nuestro.) Vemos, pues, que bajo la legislación anterior correspondía al antiguo Tribunal de Distrito conocer de los procedimientos para el nombramiento de tutor a una persona mayor de edad. Conforme al inciso 4 de la Sec. 13 de la Ley de la Judicatura, esa competencia corresponde hoy al Tribunal Superior.

Como el Art. 180 dispone que la declaración de incapacidad deberá ser hecha por la Corte de Distrito (Tribunal Superior) del *domicilio* del incapaz, bajo la norma legislativa contenida en la Sec. 10 al efecto de que toda acción civil o criminal debe presentarse en aquella Sala situada en el territorio en que la misma hubiese sido radicada bajo la legislación anterior, de ordinario corresponde a aquella Sala del Tribunal Superior que cubre el lugar del domicilio del incapacitado el hacer la declaración.

■ Debemos reafirmar, como norma adecuada de funcionamiento y competencia, que no obstante corresponderle al Tribunal Superior, que cubre todo el territorio geográfico de Puerto Rico, la facultad de hacer declaraciones de incapacidad y nombramientos de tutor, conforme al mandato Legislativo los abogados y las partes deben acudir normalmente a aquella Sala del Tribunal Superior que comprende el *domicilio* del supuesto incapacitado. Igual norma debe regir en aquellos otros asuntos de jurisdicción voluntaria o contenciosos en que por la ley vigente al regir la de la Judicatura se fijaba una determinada competencia bien a base de la situación de los bienes afectados, ya del domicilio de una persona o bajo cualquier otro criterio de ley positiva.

Pasemos entonces a considerar el problema de si, como sostienen los peticionarios, es nula la declaración de incapacidad y nombramiento de tutor decretada por la Sala de Caguas del Tribunal Superior por el fundamento, primero, de que dicha Sala no cubre el domicilio del declarado inca-

pacitado, y segundo, porque otra Sala ya había comenzado a entender del asunto.

Volviendo a la Sec. 10 de la Ley de la Judicatura, la misma dispone de manera inequívoca que "no se desestimará ningún caso fundado en haberse sometido a una sección sin jurisdicción o autoridad o a una sala de un tribunal sin competencia para ello."

Esta disposición constituye la esencia misma de la reforma orgánica del Poder Judicial de 1952, que de hecho había ya empezado con la Ley de la Judicatura de 1950. Fue precisamente la frustración de las acciones y de los derechos de los litigantes bajo el anterior sistema de la división de Puerto Rico en distintos distritos judiciales de jurisdicción no unificada lo que inspiró la necesidad de la reforma.

En el Informe del Comité que redactó el Proyecto de la presente Ley de la Judicatura se dice lo siguiente en relación con el anterior mandato de la Ley:

"Tanto en su título como en su contexto, esta sección hace referencia a jurisdicción y competencia, conceptos que generalmente se han evitado en la Ley por miedo a ambigüedades y connotaciones restrictivas que posiblemente las acompañan. Aquí, sin embargo, es preferible usarlas, la primera, para demostrar que el completo poder del Estado Libre Asociado como soberano para adjudicar casos le es conferido a las cortes aquí creadas y, la segunda, para demostrar que el lugar propio para celebrar el juicio es *el mismo* que las leyes anteriores habían provisto, generalmente en el sitio en que ocurrieron los hechos o en que radica la propiedad en controversia o el lugar donde residen las partes. Habiendo hecho estos importantes pronunciamientos, la sección entonces contiene la disposición *igualmente fundamental* y original al efecto de que '*no se desestimará ningún caso fundado en haberse sometido a una sección sin jurisdicción o autoridad o a una sala de una corte sin competencia para ello.'* " (Énfasis suplido.)

El anterior mandato legislativo al efecto de que no se desestimará ningún caso por las razones dichas no está en

forma alguna limitado en sus efectos por las otras disposiciones normativas sobre convenio de las partes o anuencia del juez. Según hemos dicho antes, estas últimas disposiciones responden a la ordenada distribución de los asuntos litigiosos a través de todo Puerto Rico como un solo distrito judicial. De ahí que en última instancia se imponga al juez la responsabilidad final de, o seguir viendo el caso, o disponer su transferencia.

■  En cuanto al primer fundamento de impugnación, debemos concluir que no es nula la declaración de incapacidad y nombramiento de tutor hecha en este caso por la Sala de Caguas del Tribunal Superior por razón de que la extensión territorial de dicha Sala no comprende, conforme a la legislación anterior, el domicilio del Sr. Ayuso. (⁴) Tampoco puede decretarse la nulidad de dicha declaración por el segundo fundamento, siendo como son ambas Salas, la de San Juan y la de Caguas, un mismo Tribunal Superior.

En el recurso O-68-306 en que los peticionarios impugnan el dictamen de la Sala de San Juan negándose a seguir conociendo del asunto en razón de que la declaración de incapacidad y el nombramiento de un tutor que era el asunto pendiente ya habían sido decretados por la Sala de Caguas, el auto de *certiorari* expedido será anulado. Fue muy ponderada y en todo correcta la disposición tomada por el Hon. Plinio Pérez Marrero. Hubiera sido muy poco edificante, incompatible con la mejor tradición judicial establecer, como en el ejemplo bíblico, un pugilato de Salas disputándose el asunto. Una actuación de la Sala de San Juan insistiendo en nombrar ella otro tutor hubiera conducido a una situación indeseable al tratar ambos tutores de ejercer sus funciones cada uno invocando la autoridad judicial conferídale por esas Salas.

---

(⁴) La solicitud de incapacidad radicada en la Sala de San Juan no alega el domicilio del Sr. Ayuso.

■ La norma generalmente aceptable de que cuando un tribunal asume jurisdicción primeramente sobre un asunto debe retenerla, norma ésta que se origina con la existencia de tribunales distintos y que no resulta ser enteramente aplicable a la organización judicial que nos rige de un solo tribunal unificado en jurisdicción, no debe prevalecer en una situación como la presente sobre la norma de mayor propiedad, ponderación y buen juicio del magistrado en el descargo de la función judicial.

Habiéndose concluido que no es nula la declaración de incapacidad y el nombramiento de tutor decretados por la Sala de Caguas, se dejan en vigor dicha declaración y nombramiento de tutor, y se anulará el auto expedido en el recurso O-68-307.

Por haber fallecido su padre, los menores peticionarios son ya herederos forzosos de su abuelo Don Antonio Ayuso. El Art. 186 del Código Civil concede la tutela legítima en estos casos en primer término al cónyuge. La concurrencia de herederos forzosos y el cónyuge no produce, *ipso iure*, un estado de conflicto.

La Sala de Caguas concedió a dichos menores intervención para que alegaran lo que creyeren procedente a su derecho. Los autos elevados no demuestran que hubieran intervenido. Sin embargo, en vista de la manera en que se han sucedido los hechos en estos recursos, nuestra decisión no tendrá el efecto de impedir que los menores, al volver el asunto al Tribunal Superior, ejerzan el derecho a intervenir que les fue concedido, limitado ya—por cuanto no existe controversia entre los interesados sobre la declaración de incapacidad— a lo que respecta al nombramiento de tutor, y sustancien el derecho que alegan tener a que la Sra. Juanita Ayuso Valdivieso sea nombrada tutor.

■ Radicada una causa o recurso en una Sala del Tribunal de Primera Instancia que no es la señalada por ley con competencia para conocer del asunto, como regla general,

el juez que la preside debe dar traslado de la misma a la Sala correspondiente, a menos que existan circunstancias extraordinarias que requieran apartarse de esta norma, y justifiquen que el juez dé su anuencia para seguir con la causa. De lo contrario, tendríamos la unificación de los tribunales para fines de jurisdicción, pero no tendríamos la más ordenada organización para fines de funcionamiento. Ello podría redundar en una menos eficiente administración de justicia.

Considerando la norma legislativa de competencia que debe ser respetada; considerando el hecho que los Sres. Ayuso Mieres tienen su domicilio en San Juan y aquí radican sus bienes principales, y que el foro por ley más apropiado y conveniente sería el de dicha Sala para todo otro trámite relacionado con dichos bienes y la tutela, se dispone que al devolverse los autos en el recurso O-63-307 se dé traslado de oficio del asunto a la Sala de San Juan del Tribunal Superior para sustanciar la intervención concedida a los menores y para todo ulterior trámite. Lo dispuesto no afecta el ejercicio del cargo de tutor por la Sra. Mieres mientras de otro modo no sea relevada del mismo.

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Blanco Lugo, no intervinieron.