Los esposos FRANK M. RAMÍREZ RAMÍREZ y MARTA FAGUNDO LÓPEZ, ETC., recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

*Número:* O-84-657          *Resuelto:* 1ro de octubre de 1985

*Frank M. Ramírez Ramírez,* por derecho propio, y en representación de su esposa y la Sociedad de Gananciales; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

En enero de 1983, los esposos Ramírez-Fagundo instaron una acción de cobro y ejecución de hipoteca por la vía ordinaria en el Tribunal de Distrito, Sala de Mayagüez. Ante la incomparecencia de los demandados, obtuvieron sentencia en rebeldía. Se les condenó a satisfacer el crédito hipotecario ascendente a $7,500 de principal, intereses devengados, más honorarios de abogados pactados. En ejecución, el inmueble fue subastado y mediante escritura pública fue adjudicado a los promoventes el título de propiedad. Presentada para inscripción, el Registrador se negó aduciendo que el "Tribunal de Distrito no tiene jurisdicción ni competencia para ventilar un caso de ejecución de hipoteca por la vía ordinaria". Se fundamentó en el Art. 202 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2701, que reza:

> *Tendrá jurisdicción y competencia exclusiva* para conocer del procedimiento sumario hipotecario, cualquiera que sea la cuantía de la obligación, *la Sala del Tribunal Superior* en cuya circunscripción territorial radiquen todos los bienes hipotecados, *sin que se admita, en forma alguna, sumisión en contrario.*

Si la finca gravada radicara en territorio de más de una Sala o cuando fueren varios los bienes hipotecados y radiquen en territorios correspondientes a diferentes Salas del Tribunal Superior, tendrá jurisdicción y será competente para conocer del procedimiento sumario cualquiera de ellas.

En los casos cubiertos por el párrafo anterior, en la escritura donde se acuerde la hipoteca, las partes pueden escoger de entre las Salas competentes una de ellas de manera exclusiva. (Énfasis suplido.)

Denegada la recalificación, a solicitud de los esposos Ramírez-Fagundo, revisamos.

## II

De inmediato, la lectura del texto del Art. 202 literalmente representa un mandato absoluto del Legislador donde remite al Tribunal Superior, como foro exclusivo, los procedimientos sumarios hipotecarios. De su faz, su tajante lenguaje no admite sumisión en contrario, y por ende anuencia del juez. Para examinar en su dimensión constitucional la validez de este precepto categórico, es menester una somera referencia al trasfondo histórico peculiar del concepto de sumisión en materia inmobiliaria.

En el Derecho Registral puertorriqueño la ejecución de la hipoteca por la vía sumaria tiene su génesis en la Ley Hipotecaria para las Provincias de Ultramar de 1893. La creación de este procedimiento respondió al propósito de "emancipar el crédito de las formas y ritos". Exposición del Ministro de Ultramar a la Reina Regente de España. Entre sus disposiciones centrales el Art. 170 disponía:

*Será Juez competente el del lugar en que radiquen todos los bienes hipotecados, sin que se admita sumisión en contrario.* Cuando los bienes hipotecados radiquen en distintos distritos judiciales, será competente aquel de entre ellos el cual constare hecha expresa sumisión en la escritura, y en defecto de tal sumisión, el del lugar en donde radique el inmueble de mayor valor ó cualquiera de los varios inmuebles de mayor valor si lo tuvieren igual dos ó más en la escritura.

> Si ésta fue inscrita con anterioridad á la ley y no expresa el valor de las fincas, se atenderá á la cuantía de la responsabilidad hipotecaria distribuida entre ellas. (Énfasis suplido.)

Esta prohibición a la sumisión, como limitación al libre albedrío de las partes, "se explica perfectamente dada la naturaleza del procedimiento sumario a que se refiere . . .". [1] *Jiménez* v. *Corte*, 45 D.P.R. 921, 925 (1933). Sin embargo, nuestra jurisprudencia había establecido claramente que esta restricción no aplicaba a procedimientos ordinarios. *Arsuaga* v. *Registrador*, 46 D.P.R. 296 (1934); *Jiménez* v. *Corte*, supra; *Trueba* v. *Rosales & Cía.*, 33 D.P.R. 1027 (1925).

La diferencia entre ambos procedimientos perduró en la Ley Hipotecaria Núm. 198 de 8 de agosto de 1979. No obstante, poco tiempo después la situación varió. La Ley Núm. 143 de 14 de junio de 1980 introdujo unas enmiendas sustanciales que modificaron radicalmente la norma vigente hasta ese momento. Específicamente en el Art. 201, el segundo pá-

---

[1] Por el contrario, en España, al tiempo de extenderse a Puerto Rico la Ley Hipotecaria para las Provincias de Ultramar regía la Ley Hipotecaria de 8 de febrero de 1861. Esta última no contenía un procedimiento análogo. Para el cobro de una deuda hipotecaria eran aplicables las normas del Código de Enjuiciamiento Civil.

La ejecución de hipoteca por la vía sumaria fue incorporada en España en 1909 a la luz del "ensayo" habido en las "Provincias de Ultramar". M. González-Alegre Bernardo, *Los procedimientos judiciales de la ley hipotecaria*, 3ra ed., Barcelona, Ed. Bosch, 1958, pág. 81. Allí, distinto a la ley que le sirvió de modelo, el precepto legal dejaba al arbitrio de las partes la determinación de la competencia. Leía:

"Art. 131. El procedimiento judicial sumario se ajustará a las siguientes reglas:

"Primera. Será Juez competente para conocer del procedimiento, cualquiera que sea la cuantía de la obligación, *el de primera instancia a quien se hubieren sometido las partes en la escritura de constitución de hipoteca;* en su defecto, el de primera instancia del partido en que radique la finca, y si ésta radicare en más de uno, lo mismo que si fueren varios y radicaran en diferentes partidos, el Juez de primera instancia de cualquiera de ellos, a elección del demandante." (Énfasis suplido.)

Este reconocimiento en España a la sumisión surge como "derivación ideológica y real del pacto de sumisión" contractual existente en el derecho español primitivo. Véase González-Alegre, *op. cit.*, págs. 87–88.

rrafo extendió al procedimiento ordinario los trámites de la Ley Hipotecaria referentes al ejecutivo sumario. Lee:

> También podrá utilizar el acreedor hipotecario, a su elección, la vía judicial ordinaria para el cobro de su crédito, en cuyo caso *serán aplicables únicamente los siguientes artículos: 202,* 207 párrafos v y vi, 211, 220, 221, 222, 223, 224, 226, excluyendo la frase relativa al requisito de confirmación, 227, 228, 229, 231, 232, 234. (Énfasis suplido.)

■ Esta ampliación tuvo el efecto, entre otros, de otorgarle competencia exclusiva al Tribunal Superior donde radiquen los biénes. Así en *C.R.U.V.* v. *Torres Pérez,* 111 D.P.R. 698 (1981), expresamos que "[a] tenor de la vigente Ley Hipotecaria y del Registro de la Propiedad de 1979, el Tribunal Superior es foro de *competencia exclusiva* para conocer, tanto del procedimiento sumario hipotecario como de la acción civil ordinaria sobre ejecución de hipoteca". (Énfasis suplido.)

En dicho recurso, distinto al presente, no se planteó ni discutió el impacto de esta legislación en la esfera constitucional. Examinémoslo.

### III

El precepto legislativo sobre competencia del Tribunal Superior no presenta dificultad alguna. Sin embargo, el mandato de jurisdicción exclusiva, atado a la prohibición de sumisión de las partes, socava principios fundamentales de nuestro ordenamiento jurídico.

La Sec. 2, Art. V de la Constitución dispone:

> Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización.

Sobre el particular, la intención de la Constituyente fue

clara: "[eliminar] en los litigios las cuestiones técnicas de jurisdicción." Su propósito fue superar barreras en aras de lograr cumplida y cabal justicia. El lenguaje constitucional consignó en aquel momento, "[d]entro del sistema que hasta ahora ha prevalecido en Puerto Rico a menudo se derrot[an] los fines de la justicia y se perjudica[n] irremediablemente los derechos de litigantes por haber éstos acudido a tribunales que, según dicho sistema carec[erían] por razones sumamente técnicas, de jurisdicción para conocer su causa". Informe de la Comisión de la Rama Judicial, 4 Diario de Sesiones de la Convención Constituyente 2609 (1952).

Para implementar esta directriz constitucional, las secciones primera y décima de la Ley de la Judicatura de 1952 disponen:

El poder judicial del Estado Libre Asociado de Puerto Rico residirá en un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración compuesto por el Tribunal Supremo como tribunal de última instancia, y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia.

El Estado Libre Asociado de Puerto Rico queda por la presente constituído en su solo distrito judicial, sobre todo el cual el Tribunal General de Justicia ejercerá su poder y autoridad.

.    .    .    .    .    .    .    .

El Tribunal de Primera Instancia es un tribunal de jurisdicción original general, con autoridad para actuar a nombre y por la autoridad del Estado Libre Asociado de Puerto Rico, en todo procedimiento civil o criminal, según más adelante se dispone. Toda acción civil o criminal se presentará en aquella sala del Tribunal situada en el territorio en que la misma hubiese sido radicada bajo la legislación en vigor hasta el presente, pero no se desestimará ningún caso fundado en haberse sometido a una sección sin jurisdicción o autoridad o a una sala de un tribunal sin competencia para ello. Todo caso podrá ventilarse en la sección o sala en que se radique, por convenio de las partes y la anuencia del juez que presida dicha sala en ese momento, o, de no ser así oído,

será transferido por orden del juez a la sección o sala correspondiente, de conformidad con las reglas que el Tribunal Supremo adoptare.

"Un objetivo central de esta ley era eliminar el oscuro concepto de 'jurisdicción', causa de que se frustrase en muchos casos, por la fijación rígida de fronteras artificiales, la causa de la justicia." J. Trías Monge, *El sistema judicial de Puerto Rico*, Río Piedras, Ed. Universitaria, 1978, pág. 136.

En exégesis del precepto constitucional y espiritual que la inspiró, en *Rodríguez* v. *Registrador*, 75 D.P.R. 712, 715–716 (1953), expresamos:

> [B]ajo nuestra Constitución y bajo la Ley de la Judicatura se establece un sistema judicial unificado; en que se eliminan las viejas diferencias jurisdiccionales entre los tribunales o salas o secciones de tribunales, eliminándose los problemas técnicos de jurisdicción y destruyéndose las consecuencias inexorablemente fatales de la ausencia de jurisdicción, y que cualquier caso puede radicarse, adjudicarse y tramitarse en cualquier sala o sección del Tribunal de Primera Instancia, sin que sea nula la sentencia que se dicte por la sala o sección donde se haya tramitado el caso, aunque esa sala o sección no sea la más conveniente, siendo válida la sentencia si las partes han convenido, con la aprobación del Juez, que ese caso se vea en esa sala o sección.

■ A tono con este diseño constitucional, es incuestionable la validez de una sentencia dictada por un tribunal sin competencia con la anuencia expresa o implícita de las partes. Esa autoridad tiene sólido apoyo. "[E]l poder judicial para adjudicar en toda contienda (excepto en aquellos casos especiales que deben ser llevados originalmente al Tribunal Supremo) está conferido al Tribunal Superior y de Distrito conjuntamente, para lo cual fueron unificados como el Tribunal de Primera Instancia; y ningún caso podrá ser desestimado por ausencia de jurisdicción o falta de competencia." (Traducción nuestra.) C. E. Clark y W. D. Rogers, *The New Judiciary Act of Puerto Rico: A Definitive Court Reorganiza-*

*tion,* 61 Yale L.J. 1147, 1156 (1952). Como corolario, esta facultad, plasmada en la Ley de la Judicatura, por ser esencial a la estructura básica del Poder Judicial según nuestra Constitución, no puede ser mermada por el poder legislativo. Véase M. A. Velázquez Rivera, *Jurisdicción y competencia de los tribunales de Puerto Rico,* 48 Rev. Jur. U.P.R. 27 (1979).

Reiteramos que la Constitución restringió el poder de la Asamblea Legislativa a determinar la competencia de los tribunales, no su jurisdicción. Bajo esta premisa cardinal invariablemente nos hemos pronunciado en el sentido de que el término "jurisdicción" en la ley corresponde a aquella facultad potestativa para adjudicar controversias. *Díaz Segarra* v. *El Vocero,* 105 D.P.R. 850 (1977) ; *Pueblo* v. *Tribunal Superior,* 84 D.P.R. 140 (1961) ; *Fernández & Hno.* v. *Pérez,* 79 D.P.R. 244 (1956). "El mandato es claro. La Asamblea Legislativa no puede variar el principio de unidad jurisdiccional del sistema." *Lausell Ducós* v. *A.C.A.A.,* 111 D.P.R. 593 (1981). Por tanto, "es válida una decisión de un tribunal sin competencia territorial; no es nula". *Colón* v. *Tribunal Superior,* 97 D.P.R. 106 (1969).

A la luz de lo expuesto, *resolvemos que el texto del Art. 202 de la Ley Hipotecaria, en la medida en que otorga jurisdicción exclusiva a una de las secciones del Tribunal de Primera Instancia (Tribunal Superior) —sin tomar en cuenta la sumisión expresa o implícita de las partes y la anuencia del foro judicial— es inconstitucional por infringir el principio rector de un solo sistema judicial unificado. Como consecuencia, la sentencia del Tribunal de Distrito, Sala de Mayagüez, es válida. La nota recurrida debe revocarse. El Registrador procederá a la inscripción solicitada.*

*Se dictará la correspondiente sentencia.*