El Juez Presidente, Señor Negrón Fernández, y el Juez Asociado, Señor Dávila, no intervinieron.

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RUBÉN DE JESÚS GÓMEZ, acusado y apelante.

*Número:* CR-70-53 *Resuelto:* 25 de abril de 1972

*Helios A. Zeno Villafañes,* abogado del apelante; *Gilberto Gierbo-lini, Procurador General,* y *Jorge Ríos Torres, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Contra el apelante se presentó, previa determinación judicial de causa probable, en 17 de marzo de 1969 una denuncia ante el Tribunal de Distrito, Sala de Guayama, por infracción al Art. 82 de la Ley de Espíritus y Bebidas Alcohólicas, 13 L.P.R.A. sec. 1759, según regía entonces. Se trataba de un

delito menos grave. La celebración del juicio se suspendió varias veces a petición de la defensa y finalmente se señaló para el 9 de septiembre de 1969. En esa ocasión el apelante solicitó la desestimación del proceso. Alegó que la referida Sala carecía de "jurisdicción" porque la Ley de Espíritus y Bebidas Alcohólicas, Art. 86(B), confería jurisdicción exclusiva al Tribunal Superior para entender en infracciones a dicha ley. Dicho artículo disponía lo siguiente:

"El Tribunal Superior conocerá de todos los casos de delitos menos graves por infracción a las disposiciones de este Subtítulo o de los reglamentos promulgados o que se promulguen para su ejecución; Disponiéndose, que los correspondientes juicios se celebrarán ante tribunal de derecho."—13 L.P.R.A. sec 1765. [1]

De cuál era la eficacia de ese artículo a la fecha de la vista en el Tribunal de Distrito—9 de septiembre de 1969—nos ocuparemos más adelante. Sigamos con los hechos. Ante el planteamiento antes mencionado, la Sala de Guayama del Tribunal de Distrito ordenó el traslado del caso a la Sala de la misma ciudad del Tribunal Superior. En el Tribunal Superior el fiscal presentó la acusación el 2 de octubre de 1969 y se llamó el caso para lectura de la acusación el 14 de dicho mes y año. Se dio por leída la misma, se le concedió un término al acusado para hacer alegación y se señaló el caso para el 7 de noviembre de dicho año. El 17 de octubre de 1969 el apelante presentó por escrito una moción de desestimación alegando que no se presentó "denuncia" contra el acusado dentro de los sesenta días de su citación. En la súplica solicitaba que se desestimase la "acusación" presentada a base de lo antes dicho. El 19 de diciembre de 1969 se discuntió dicha moción, la misma fue declarada sin lugar por el tribunal y se vio el caso en su fondo. El apelante fue declarado culpable y se le impuso una multa de $100.00.

En apelación el apelante señala los siguientes tres errores:

---

[1] Derogado por Ley Núm. 143 de 30 junio 1969.

"1. El Tribunal Sentenciador incidió al determinar que existía justa causa para radicar la acusación fuera del término previsto por las Reglas de Procedimiento Criminal.

2. El Tribunal Sentenciador incidió al determinar que la prueba .presentada por el Ministerio Fiscal era suficiente para sostener el delito imputado al acusado-apelante.

3. El Tribunal Sentenciador incidió al prejuzgar la culpabilidad del acusado-apelante, demostrando el Honorable Magistrado que presidió el proceso, con todo el respeto que nos merece, que actuó con perjuicio [*sic*] y parcialidad."

En la discusión del primer error señalado el apelante argumenta lo siguiente: En 17 de marzo de 1969 se presentó la denuncia, se determinó causa probable y se expidió la citación. La acusación se presentó en el Tribunal Superior el 2 de octubre de 1969 y su lectura se efectuó el día 14 de ese mismo mes. No existe duda, argumenta el apelante, de que para dicha fecha habían transcurrido más de sesenta días entre la fecha de la citación y la de la presentación de la acusación. Argumenta el apelante que en el supuesto de que hubiese procedido el traslado del caso, del Tribunal de Distrito al Superior, los procedimientos efectuados en el Tribunal de Distrito no eran válidos pues dicho Tribunal carecía de jurisdicción sobre el asunto y por lo tanto, razona, la presentación de la acusación en el Tribunal Superior fue tardía.

No tiene razón el apelante. La presentación de la denuncia en el Tribunal de Distrito efectuada *dentro* del término de sesenta días a partir de la citación del acusado satisfizo el requisito de la Regla 64(n)(2) que invoca.(2) Lo satisfizo porque no existe el problema de falta de jurisdicción (del Tribunal de Distrito) que el apelante menciona. Desde el año 1952, en que se aprobó la Constitución, los Tribunales de Puerto Rico constituyen "un sistema judicial unificado en

_____
(2) Como se sabe, la Regla 64(n)(2) de Procedimiento Criminal dispone que la moción para desestimar podrá basarse en "Que no se presentó acusación o denuncia contra el acusado dentro de los sesenta días de su arresto o citación."

lo concerniente a jurisdicción, funcionamiento y administración." Constitución, Art. V, Sec. 2.

En el Informe de la Comisión de la Rama Judicial de la Convención Constituyente, al discutirse la citada Sec. 2 del Art. V de la Constitución, se expresa lo siguiente:

"Esta sección establece la completa unificación de los tribunales de Puerto Rico. La unificación de los tribunales produce, entre otros efectos, *la eliminación de problemas técnicos de jurisdicción*. El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales y para disponer que de acudir un litigante a un tribunal distinto al indicado por las leyes sobre competencia, la parte contraria puede solicitar y obtener el traslado de la causa, o el tribunal motu proprio puede así disponerlo."([3]) (Bastardillas nuestras.)

■ Como puede verse, uno de los propósitos de esa sección fue eliminar problemas de falta de jurisdicción como el que plantea el caso de autos. Cuando un litigante acude a un tribunal distinto al indicado por las leyes, la parte contraria puede solicitar y obtener el traslado de la causa, o el tribunal *motu proprio* puede así hacerlo.

Nuestra Ley de la Judicatura, la cual tuvo el propósito de realizar el citado mandato constitucional, dispone en su Sec. 9 que el Tribunal de Primera Instancia se compone de dos secciones, una que se conoce como Tribunal Superior y otra que se conoce como Tribunal de Distrito. 4 L.P.R.A. sec. 61. Luego dispone dicha Ley de la Judicatura en forma muy clara y terminante en su Sec. 10, 4 L.P.R.A. sec. 62, lo siguiente:

"El Tribunal de Primera Instancia es un tribunal de jurisdicción original general, con autoridad para actuar a nombre y por la autoridad del Estado Libre Asociado de Puerto Rico, en todo procedimiento civil o criminal, según más adelante se dispone. Toda acción civil o criminal se presentará en aquella sala del Tribunal situada en el territorio en que la misma hubiese sido radicada bajo la legislación en vigor hasta el presente, *pero*

([3]) *Diario de Sesiones de la Convención Constituyente de Puerto Rico,* ed. Equity de 1961, Tomo 4, pág. 2609.

*no se desestimará ningún caso fundado en haberse sometido a una sección sin jurisdicción* o autoridad o a una sala de un tribunal sin competencia .para ello. Todo caso podrá ventilarse en la sección o sala en que se radique, por convenio de las partes y la anuencia del juez que presida dicha sala en ese momento, o, de no ser así oído, será transferido por orden del juez a la sección o sala correspondiente, de conformidad con las reglas que el Tribunal Supremo adoptare." (Bastardillas nuestras.)

 Dicha Sec. 10 es tan clara que apenas si necesita comentarios. El caso de autos pudo haberse visto en el Tribunal de Distrito si las partes y el juez lo hubiesen consentido. Desde la aprobación de la Ley de la Judicatura el citado Art. 86(B) era directivo y no imponía un requisito jurisdiccional mandatorio, pero como una de las partes—el apelante—objetó procedía el traslado y el juez hizo bien en concerderlo. Sec. 10 de la Ley de la Judicatura, 4 L.P.R.A. sec. 62.

Es precisamente en situaciones como las del caso de autos que opera concretamente la citada disposición constitucional que establece que los tribunales del país constituyen un sistema judicial unificado en lo concerniente a jurisdicción. También opera específicamente en este caso la citada Sec. 10 de la Ley de la Judicatura.

El Informe de la Comisión que redactó el anteproyecto de la Ley de la Judicatura, cuyo informe la Comisión de lo Jurídico Civil de la Cámara de Representantes, la cual informó el referido proyecto, hizo parte de su informe oficial, al discutir precisamente la disposición de dicha ley que establece de qué casos conocerá el Tribunal Superior, expresa lo siguiente:

"Estas secciones de esta Ley no imponen requisitos jurisdiccionales mandatorios que deban seguirse en todos los casos y a toda costa. La especificación de tipos de casos en esta Ley indica aquellas materias que propiamente pertenecen a la Corte Superior; los mismos no levantan barreras infranqueables. Ambas secciones de la Corte de Primera Instancia tienen y pueden ejercitar el poder para adjudicar todos los casos que pertenecen a la Corte

General de Justicia y de esta forma sus sentencias, no importa lo que el asunto envuelto o la cantidad en controversia pueda ser, son totalmente efectivas. Las secs. 13 y 18 de esta Ley expresan las divisiones adecuadas para la efectiva consideración y disposición de los casos; pero si no son seguidas en determinado caso, dicha controversia puede verse donde se radicó, por consentimiento de las partes y la aprobación del juez, o en todo caso, puede ser transferida para juicio ante la sala apropiada. En ningún caso debe ser el pleito desestimado."

■ Ese mismo informe expresa más adelante que bajo la nueva ley "las disposiciones especiales sobre el lugar del juicio de casos criminales" y de otros procedimientos "subsistirán como disposiciones directivas," en cuanto a tales casos. (⁴)

Aparte de los documentos oficiales, probablemente el comentario más autorizado sobre nuestra Ley de la Judicatura es el hecho por el distinguido Juez Charles E. Clark y el Lcdo. William D. Rogers, en el trabajo que más adelante mencionamos ya que el Juez Clark fue uno de los principales coautores del anteproyecto de la Ley de la Judicatura. Dicho comentario coincide con la exposición que hemos hecho y con los documentos que hemos citado. Se expresa allí que las disposiciones legales que disponen sobre el foro para ver determinados casos son ahora, bajo la Constitución y la Ley de la Judicatura, directivas en vez de mandatorias jurisdiccionales. Se espera, desde luego, expresan los autores, que los jueces observarán dichas disposiciones mandatorias. Véase, de dichos autores, *The New Judiciary Act of Puerto Rico: A Definite Court Reorganization*, en 61 Yale L. J. 1147 (1952), especialmente sobre esto, a las págs. 1155–1158. Lo antes dicho en cuanto a la observancia por los jueces de dichas disposiciones mandatorias debe ser así tanto porque los jueces debemos ser los primeros en obede-

(⁴) Véase Expediente del P. de la C. 14 de la 17ma. Asamblea Legislativa, 20ma. Legislatura Extraordinaria, Informe de 22 de julio de 1952. Los fragmentos citados del Informe pueden verse en el historial que aparece bajo la Sec. 121 del Título 4 de L.P.R.A.

cer la letra y el espíritu de las leyes porque así lo requiere la buena administración de la Rama Judicial. ([5])

En *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 140 (1961) hicimos manifestaciones correctas sobre la organización y funcionamiento del sistema judicial establecido por la Constitución y por la Ley de la Judicatura, pero concluimos erróneamente que por el hecho de que en aquel caso la denuncia en el Tribunal de Distrito no había sido firmada por un fiscal, al ser trasladado el caso para la Sala correspondiente del Tribunal Superior, debía considerarse la acusación radicada por el fiscal en dicho Tribunal como el inicio del caso. ([6]) En cuanto a esa conclusión aquel caso debe entenderse revocado.

■ Mediante el segundo error señalado se impugna la suficiencia de la prueba. Dicho señalamiento no tiene mérito. El apelante fue acusado de vender bebidas alcohólicas en un establecimiento comercial de su propiedad sin tener patente o

---

([5]) Para otras fuentes además de las citadas, véase: *Consensus Statement of the National Conference on the Judiciary*, 55 J. Am. Jud. Soc'y 29 (1971); Gazell, "State Trial Courts: An Odyssey Into Faltering Bureaucracies," 8 San Diego L. Rev. 275 (1971); Schwartz, *The Unification and Centralization of the Administration of Justice*, 51 J. Am. Jud. Soc'y 337 (1967); McWilliams, *Court Integration and Unification in the Model Judicial Article*, 47 J. Am. Jud. Soc'y 13 (1963); Pound, *The Causes of Popular Dissatisfaction With the Administration of Justice*, republicado en 46 J. Am. Jud. Soc'y 55 (1962); Peck, *Court Organization and Procedures To Meet the Needs of Modern Society*, 20 The Ala. Law. 181 (1959); Elliot, *Our Faith in Justice: Puerto Rico Shows the Way to Better Courts*, 42 A.B.A.J. 24 (1956); Callison, *Courts of Injustice* (1956), págs. 525 y ss.; Snyder, *New Puerto Rico Judicial System*, 36 J. Am. Jud. Soc'y 134 (1953); Vanderbilt, *The Essentials of a Sound Judicial System*, en 48 Nw. U. L. Rev. 1 (1953) y en *Selected Writings of Arthur T. Vanderbilt*, Vol. II, pág. 51 (1967), ed. por Klein y Lee; Vanderbilt, *Minimum Standards of Judicial Administration* (1949), págs. 29 y ss.; Willoughby, *Principles of Judicial Administration* (1929), págs. 254 y ss.

Para fines de comparación en general véanse: Karlen, *Judicial Administration, The American Experience* (1970); Marsh, *An Hour and Fifteen Minutes in Old Bailey*, 55 J. Am. Jud. Soc'y 192 (1971); Harley, *The Courts of Birmingham*, 55 J. Am. Jud. Soc'y 190 (1971); Karlen, *Appellate Courts in the United States and England* (1963); Jackson, *The Machinery of Justice in England*, 2d ed. (1953).

([6]) V. escolio 5 en 84 D.P.R. pág. 147.

licencia para ello según lo exige la ley. El récord contiene prueba suficiente para sostener la convicción. El juzgador de los hechos no creyó la versión del apelante, la cual consistió en que las bebidas alcohólicas allí no se pagaban con dinero sino en especie. Declaró que si una persona consumía 10 cervezas luego las devolvía y si usaba una botella de ron, devolvía dos. No creemos que debemos intervenir con la apreciación que de la prueba hizo el juez de los hechos. No se cometió el segundo error señalado.

 El tercer error le imputa prejuicio y parcialidad al magistrado que presidió el juicio. Se argumenta que el juez expresó que la multa serían $25.00 y que luego la corrigió para imponer el mínimo que exigía la ley que eran $100.00. Art. 86 de la Ley de Espíritus y Bebidas Alcohólicas, Núm. 6 de 30 junio 1936, 13 L.P.R.A. sec. 1764. El récord no demuestra prejuicio ni parcialidad que justifique revocar. Ciertamente la corrección de la sentencia para adecuarla a lo ordenado por la ley no constituyó error. Todo lo contrario, era un deber del juez hacerlo. *González de Jesús* v. *Jefe Penitenciaría*, 90 D.P.R. 31 (1964); *Bozza* v. *United States*, 330 U.S. 160 (1947). Tampoco se cometió el tercer error señalado.

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández y el Juez Asociado, Señor Martínez Muñoz, no intervinieron.