EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis F. Cosme, etc.<br><br>　　Demandantes-Recurridos<br><br>　　　　　　v.<br><br>Hogar Crea, Cooperativa de Seguros Múltiples de PR y Raúl Torres Morales<br><br>　　Demandados-Peticionarios | Certiorari<br><br>2003 TSPR 38<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-222

Fecha: 11 de marzo de 2003

Tribunal de Circuito de Apelaciones:
　　　　　　　Circuito Regional VI

Juez Ponente:
　　　　　　　Hon. Rafael Martínez Torres

Abogado de la Parte Peticionaria:
　　　　　　　Lcdo. Pedro R. Cintrón Rivera

Abogados de la Parte Recurrida:
　　　　　　　Lcdo. Israel Delgado Ramos
　　　　　　　Lcda. Waleska Delgado Marrero

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis F. Cosme, Etc.

    Demandantes-Recurridos

        vs.

                    CC-2001-222       Certiorari

Hogar Crea, Cooperativa de
Seguros Múltiples de PR y
Raúl Torres Morales

    Demandados-Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico a 11 de marzo de 2003.

Tenemos la ocasión para resolver si un juez del Tribunal de Circuito de Apelaciones puede intervenir en un caso pendiente ante el foro de instancia sólo porque fue el juez sentenciador antes, cuando era parte del Tribunal de Primera Instancia.

I.

El 1 de agosto de 1997 el Tribunal de Primera Instancia, Sala Superior de Humacao, dictó una sentencia mediante la cual declaró con lugar la demanda por daños y perjuicios instada por la familia Cosme Rivera (los demandantes) contra el Hogar Crea, la Cooperativa de Seguros Múltiples y otros (los

peticionarios). En la referida sentencia el tribunal le impuso a los peticionarios la responsabilidad solidaria por los daños causados durante un accidente de automóviles.[1] De dicha determinación acudieron ambas partes al Tribunal de Circuito de Apelaciones. Luego de consolidar los recursos, el foro apelativo dictó una sentencia el 28 de junio de 1999 y resolvió devolver el caso al tribunal de instancia para que: (1) determinara y concediera las deducciones correspondientes bajo la Ley de Protección Social por Accidentes de Automóviles; (2) le impusiera a los peticionarios el pago de honorarios de abogados por temeridad, y (3) celebrara una vista evidenciaria para determinar una suma a serle concedida al menor perjudicado en el accidente por concepto del menoscabo en su potencial para generar ingresos. Ambas partes solicitaron la reconsideración de dicho dictamen, por lo que el foro apelativo modificó su sentencia, a los únicos fines de que se determinara en el tribunal inferior la cuantía por el referido menoscabo para generar ingresos sin que se celebrase una vista evidenciaria, y para deducir el propio foro apelativo las cuantías correspondientes a lo dispuesto en la Ley de Protección Social por Accidentes de Automóviles. En la referida sentencia el Tribunal de Circuito de Apelaciones también señaló *motu proprio* en

---

[1] En dicho accidente él más afectado resultó ser el hijo menor de edad de la familia Cosme Rivera quien sufrió una desfiguración permanente en un lado de la cara y recibió daños en uno de sus hombros.

cuanto a la designación de un juez en el tribunal de instancia que:

> Sin lugar a dudas, nadie posee conocimiento del expediente del presente caso ante instancia, sus pormenores y circunstancias como el Juez Soler Aquino. Esto lo hace la persona idónea para atender los diferentes asuntos que hemos expresado en la parte dispositiva de nuestra sentencia por lo que preferiblemente, debe ser él quien los atienda, salvo criterio en contrario. Quedará a discreción del Juez Administrador del referido foro designar a quien entienda para atender nuestra sentencia.

De dicha determinación las partes no acudieron en revisión ante este Tribunal.

Para aquel entonces el Juez Soler Aquino, quien había atendido originalmente el caso de autos en el foro de instancia, había sido nombrado juez del Tribunal de Circuito de Apelaciones. No obstante, otro juez de la región judicial de Humacao refirió la aludida sentencia del foro apelativo en este caso al Juez Soler Aquino para que atendiese lo dispuesto allí. Ello, a pesar de que éste no se desempeñaba ya como juez del foro de instancia. Los demandantes se opusieron y solicitaron la reconsideración de tal decisión. El juez que había referido el caso a Soler Aquino señaló entonces una vista para dilucidar la referida controversia. Sin embargo, antes de que se celebrara tal vista en reconsideración, el Juez Soler Aquino, haciendo las funciones de un juez del tribunal de instancia, atendió el mandato del foro apelativo y procedió a dictar el 25 de enero de 2000 una resolución que modificaba su sentencia anterior conforme a lo

dispuesto por el Tribunal de Circuito de Apelaciones en su dictamen del 28 de junio de 1999.

Inconforme con la resolución de Soler Aquino, los peticionarios acudieron nuevamente al Tribunal de Circuito de Apelaciones. Alegaron allí, *inter* alia, que el Juez Soler Aquino no podía atender el mandato anterior del foro apelativo hasta tanto se resolviera la moción de reconsideración sobre el particular que estaba pendiente en el Tribunal de Primera Instancia.

Mediante una sentencia de 14 de febrero de 2001, el Tribunal de Circuito de Apelaciones confirmó el referido dictamen de Soler Aquino. Resolvió que el Tribunal de Primera Instancia retuvo siempre la facultad de dejar sin efecto la vista para discutir la moción de reconsideración aludida y para resolver definitivamente el asunto como se hizo. Determinó que el hecho de que hubiese sido otro juez del foro de instancia quien acogió la moción de reconsideración no había privado al Juez Soler Aquino de su facultad como juez sentenciador en el caso para atender lo ordenado por el foro apelativo y dictar el dictamen correspondiente. Determinó así mismo que el nuevo dictamen de Soler Aquino había hecho académica la pendiente moción de reconsideración presentada por los demandantes. También resolvió que no procedía intervenir con las determinaciones sobre si procedía una compensación por el menoscabo para generar ingresos y una partida por honorarios de abogado ya que éstas habían sido resueltas

anteriormente por otro panel del Tribunal de Circuito de Apelaciones, por lo que eran finales y firmes.

No conformes con el anterior dictamen del foro apelativo los peticionarios acudieron oportunamente ante nos el 23 de marzo de 2001 y formularon los siguientes señalamientos de error:

1. Erró el Tribunal de Apelaciones al confirmar la sentencia emitida por el Hon. Carlos Soler Aquino, éste juez de apelaciones al emitir dicha sentencia sin tener jurisdicción ni competencia para ello pues el tribunal de instancia había considerado y señalado para vista una moción de reconsideración dirigida a impugnar la participación de dicho juez en el caso.

2. Incidió el Tribunal de Apelaciones al avalar basándose en la doctrina de la ley del caso, la sentencia emitida por el Hon. Carlos Soler Aquino que concede una indemnización de $150,000 por supuesto menoscabo para generar ingresos, habiendo ausencia de pruebas sobre grado de incapacidad permanente alguna y, asimismo, al condenar a la parte demandada al pago de $12,000 por concepto de honorarios de abogados cuya suma es excesiva dado que la aquí peticionaria admitió su negligencia aunque la negó en su contestación a la demanda.

El 20 de abril de 2001 expedimos el auto de *certiorari* para revisar la sentencia dictada por el foro apelativo el 14 de febrero de 2001. El 4 de septiembre de 2001, luego de concedérsele una prórroga para ello, los peticionarios presentaron su alegato. El 4 de diciembre de 2001 los peticionarios presentaron el suyo, luego de habérseles concedido una prórroga a ellos también. Con la comparecencia de ambas partes, procedemos a resolver.

II

Como se sabe, nuestro sistema judicial consiste de un Tribunal General de Justicia al cual la Constitución y la Ley de la Judicatura de 1994 le confieren el poder judicial del Estado Libre Asociado de Puerto Rico. El Tribunal General de Justicia a su vez está integrado por el Tribunal Supremo de Puerto Rico, como máximo foro judicial del país, el Tribunal de Circuito de Apelaciones, como tribunal apelativo intermedio, y por el Tribunal de Primera Instancia. El Estado Libre Asociado de Puerto Rico está constituido en un solo distrito judicial, sobre el cual el Tribunal General de Justicia ejerce su autoridad jurisdiccional. Véase Hernández Colón, Práctica Jurídica de Puerto Rico-Derecho Procesal Civil, § 504  Michie de Puerto Rico, (1997); Ley de la Judicatura de 1994, según enmendada, 4 L.P.R.A. sec. 22c. Nuestra propia Constitución establece que los tribunales de Puerto Rico constituirán un sistema judicial **unificado** en lo concerniente a jurisdicción, funcionamiento y administración. Artículo V Sección 2 de la Constitución del Estado Libre Asociado de Puerto Rico.

Aunque nuestro sistema judicial es unificado, la jurisdicción se ejerce concretamente distribuyendo el trabajo judicial entre los distintos tribunales y salas que integran el Tribunal General de Justicia, de acuerdo con los principios normativos de **competencia**. Véase, Hernández Colón, *supra* §505. La Ley de la Judicatura de 1994 según enmendada, *supra*, establece la competencia de cada tribunal,

a saber la del Tribunal de Primera Instancia, la del Tribunal de Circuito de Apelaciones y la de éste Tribunal.

En el caso del Tribunal de Circuito de Apelaciones, su competencia aparece establecida de modo general en el Artículo 4.002 de la Ley de la Judicatura de 1994 según enmendada, *supra*. El artículo 4.001 de la referida Ley establece que el Tribunal Apelativo estará constituido por una sola sección con sede en la ciudad de San Juan que se compondrá de treinta y tres jueces. Aunque se establece claramente en la Ley de la Judicatura de 1994 según enmendada, *supra*, la competencia de los paneles de jueces que componen el Tribunal de Circuito de Apelaciones, el Reglamento de dicho Tribunal señala que el Juez Presidente, como parte de sus prerrogativas constitucionales, puede asignar jueces apelativos a llevar a cabo funciones del Tribunal de Primera Instancia. Véase, Regla 7 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A R.7.

**A la luz de la normativa antes reseñada pasamos a examinar los hechos del caso de autos.**

### III

En esencia, en el caso de autos, un juez del Tribunal de Circuito de Apelaciones atendió un caso que le fue referido por el Tribunal de Primera Instancia y procedió a enmendar una sentencia que dicho juez había dictado antes, cuando era miembro del foro de instancia. El juez referido

actuó así a pesar de estar pendiente ante el Tribunal de Primera Instancia una moción de reconsideración mediante la cual se impugnaba precisamente la nueva intervención de dicho juez en el caso. En su dictamen impugnado ante nos, el Tribunal de Circuito de Apelaciones consideró que tal proceder del juez referido había sido válido. El foro apelativo hizo hincapié en una nota al calce de su sentencia en que el juez del Tribunal de Circuito de Apelaciones en cuestión no había intervenido **"en un caso en el Tribunal de Primera Instancia"** sino que sólo había seguido "la práctica establecida en esta jurisdicción unificada de participar hasta el final en los casos en los que él presidió el juicio en el Tribunal de Primera Instancia." Erró el foro apelativo al resolver así. Veamos.

Nótese, en primer lugar, que el mero hecho de que el juez en cuestión hubiese sido el magistrado del foro de instancia quien dictó la sentencia a ser modificada en el caso de autos, de ningún modo lo autorizaba para llevar a cabo la modificación referida cuando dicho juez ya no pertenecía al Tribunal de Primera Instancia. El foro con competencia para realizar la modificación de la sentencia aludida era únicamente ese Tribunal de Primera Instancia del cual el juez en cuestión no formaba parte ya. Ausente una designación expresa para tal fin de parte del Juez Presidente del Tribunal Supremo, el Juez Soler Aquino estaba impedido de participar de nuevo en el caso como si aún fuese un juez del foro de instancia. Sencillamente, ya no era juez

de ese foro. Su segunda intervención en el caso de autos fue, pues, totalmente carente de la autorización necesaria para ello. Si bien es cierto que Puerto Rico constituye un solo distrito judicial para fines jurisdiccionales, existen también normas claras que delimitan las distintas competencias que tienen los varios foros y salas judiciales del país, sin las cuales el funcionamiento del Tribunal General de Justicia sería caótico e incoherente. El hecho de que constitucionalmente se hayan eliminado las diferencias **jurisdiccionales** entre los distintos componentes del Tribunal General de Justicia[2], no significa de ningún modo que cada juez de dicho Tribunal tiene carta blanca para ejercer su ministerio en cualquier caso. El Tribunal General de Justicia de Puerto Rico tiene un entramado propio, conforme al cual unos foros ejercen una competencia general en casos de primera instancia, Rodríguez v. Registrador, *supra*, y otros tienen una competencia apelativa, Depto. de la Familia v. Shrivers Otero, 145 D.P.R. (1998). Esta división de funciones es esencial para el funcionamiento expedito y congruente del Tribunal General de Justicia. Véase, Colón v. Tribunal Superior, 97 D.P.R. 106, 118 (1969). Por ello, la competencia propia de cada estrato del sistema judicial de Puerto Rico de ordinario debe observarse rigurosamente como condición para que el sistema pueda

---

[2] Véase, Polanco v. Tribunal Superior, 118 D.P.R. 350 (1987); Ramírez v. Registrador, 116 D.P.R. 541 (1985); Gómez Hmos. v. Tribunal Superior, 100 D.P.R. 625 (1972); Pueblo v. Tribunal Superior, 84 D.P.R. 140 (1961); Rodríguez v. Registrador, 75 D.P.R. 712 (1953).

funcionar cabalmente. Los cambios en las tareas que de ordinario le competen a cada juez sólo los puede ordenar el Juez Presidente del Tribunal Supremo mediante designaciones especiales cuando las necesidades y la buena marcha del sistema lo requieran.[3] En el caso de autos, el señor Juez Presidente no le extendió designación alguna al Juez Soler Aquino para actuar judicialmente como lo hizo.

**Existe una segunda razón por la cual no procedía la acción en cuestión del Juez Soler Aquino en el caso de autos. Cuando éste intervino por segunda ocasión, estaba pendiente ante el foro de instancia una moción de reconsideración relativa precisamente al asunto de si era procedente la nueva intervención de dicho juez en este caso. Esa moción había sido acogida ya por el Tribunal de Primera Instancia y se había señalado una vista para dilucidarla. En esas circunstancias, el Juez Soler Aquino debió esperar porque se resolviese la referida moción de reconsideración antes de actuar.**

Como se sabe, la moción que establece la Regla 47 de Procedimiento Civil de Puerto Rico es el mecanismo que provee nuestro ordenamiento procesal para que un tribunal de instancia pueda modificar algún fallo suyo. El objetivo principal de una moción de reconsideración es dar una

---

[3] Claro está, en el Tribunal de Primera Instancia pueden obviarse los límites que establecen las normas sobre la competencia de las distintas salas y secciones de ese Tribunal si las partes y el juez correspondiente lo consienten. Véase, Polanco v. Tribunal Superior, *supra*; Ramírez v. Registrador, *supra*; Pueblo v. De Jesús Gómez, 100 D.P.R. 629 (1972); Ramírez v. Ramírez, 80 D.P.R. 518 (1958).

oportunidad al tribunal que dictó la sentencia o la resolución cuya reconsideración se pide, para que pueda enmendar o corregir los errores en que hubiese incurrido al dictarla. Castro v. Sergio Estrada Auto Sales, Inc. res. el 22 de septiembre de 1999, 149 D.P.R___, 99 TSPR 143, 99 JTS 147; Vega v. Alicea, 145 D.P.R. 236 (1998). Los tribunales de instancia, pues, tienen la facultad de enmendar o dejar sin efecto algún dictamen suyo cuando éste no es final y firme, y lo hacen de ordinario movidos por alguna moción de reconsideración presentada a tiempo por la parte perjudicada por dicho dictamen. Dumont v. Inmobiliaria Estado, Inc., 113 D.P.R. 406 (1982). El mecanismo de reconsideración es de tal envergadura en nuestro ordenamiento procesal que una vez el foro de instancia acoge la moción de reconsideración, se interrumpe el término para apelar o para procurar la revisión del dictamen en cuestión. Soc. de Gananciales v. Sánchez, 148 D.P.R. ___, 99 TSPR 76, 99 JTS 82; Rodríguez Rivera v. Autoridad de Carreteras, 110 D.P.R. 184 (1980). Se estima que no debe procederse a la apelación o revisión del fallo bajo reconsideración hasta tanto esta se resuelva definitivamente. Por razones análogas, no debió el Juez Soler Aquino precipitarse a intervenir por segunda vez en el caso de autos estando pendiente una moción de reconsideración sobre tal intervención que había sido acogida por el foro de instancia. Erró el foro apelativo al resolver de otro modo. Aplica aquí lo que dijimos en otro contexto al examinar una controversia relativa a la

distribución de los asuntos litigiosos en los tribunales del país:

> "La norma generalmente aceptable de que cuando un tribunal asume jurisdicción primeramente sobre un asunto debe retenerla, norma ésta que se origina con la existencia de tribunales distintos y que no resulta ser enteramente aplicable a la organización judicial que nos rige de un solo tribunal unificado en jurisdicción, no debe prevalecer en una situación como la presente sobre la norma de mayor propiedad, ponderación y buen juicio del magistrado en el descargo de la función judicial." Colón v. Tribunal Superior, *supra*, pág. 122.

En conclusión, el Juez Soler Aquino no debió atender lo ordenado el 28 de junio de 1999 en el caso de autos por el Tribunal de Circuito de Apelaciones, estando acogida y pendiente una moción de reconsideración sobre el particular en el foro de instancia. Más importante aun, como juez del Tribunal de Circuito de Apelaciones al momento en que le fue referido el caso, Soler Aquino no podía ejercer otras funciones que no fuesen de la competencia del tribunal apelativo a menos que el Juez Presidente, como parte de sus prerrogativas constitucionales, se las hubiese asignado según lo dispone el Reglamento de dicho foro. Por ende, habiendo cesado en sus funciones como juez del foro de instancia, no podía actuar como tal de nuevo en el caso de autos aun cuando hubiese sido el juez que entendió en éste en el foro de instancia originalmente.[4]

---

[4] En vista de que resolvemos que el Juez Soler Aquino no podía volver a intervenir en el caso de autos como lo hizo, y a que ordenamos dejar sin efecto su resolución del 25 de enero de 2000, no procede considerar el segundo error

Por los fundamentos antes expuestos, procede que se dicte sentencia para revocar el dictamen de 14 de febrero de 2001 del Tribunal de Circuito de Apelaciones. Procede también que se deje sin efecto el dictamen del Juez Soler Aquino del 25 de enero de 2000 en el caso de autos, y que se devuelva el caso al Tribunal de Primera Instancia para que continúen los procedimientos a tenor con lo aquí resuelto. Se dictará una sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

señalado por los peticionarios, que va a los méritos de lo resuelto por Soler Aquino mediante dicha resolución.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis F. Cosme, Etc.

    Demandantes-Recurridos

        vs.             CC-2001-222    Certiorari

Hogar Crea, Cooperativa de
Seguros Múltiples de PR y
Raúl Torres Morales

    Demandados-Peticionarios

SENTENCIA

San Juan, Puerto Rico a 11 de marzo de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen de 14 de febrero de 2001 del Tribunal de Circuito de Apelaciones, Circuito Regional VI de Humacao.

Se deja sin efecto el dictamen del Juez Carlos Soler Aquino del 25 de enero de 2000 en el caso de autos, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Humacao, para que continúen los procedimientos a tenor con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón emitió Opinión de Conformidad, a la cual se une el Juez Asociado señor Corrada del Río. El Juez Asociado señor Rivera Pérez disiente sin opinión.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luis F. Cosme, etc.

　　　Recurridos

　　　　　v.

Hogar Crea y otros                    CC-2001-222

　　　Peticionarios



Opinión de Conformidad emitida por la Jueza Asociada señora Naveira de Rodón a la cual se une el Juez Asociado señor Corrada del Río.



　　　　　San Juan, Puerto Rico a 11 de marzo de 2003


　　　　　Este caso nos permite analizar como se entrelazan y funcionan los conceptos de competencia, jurisdicción, funcionamiento y administración en nuestro sistema judicial unificado. Aunque estamos conformes con la Opinión que hoy emite la mayoría, consideramos conveniente explicar con mayor detalle la aplicación de estos conceptos procesales.

　　　　　A continuación resumiremos los hechos pertinentes a la controversia que hoy se encuentra ante nuestra atención.

## I. LOS HECHOS

El 20 de julio de 1994, Luis F. Cosme, Madeline Rivera y la sociedad de bienes gananciales compuesta por éstos y en representación de sus hijos menores de edad Jorge Andrés y Luis Fernando Cosme Rivera[5] (en adelante Cosme) presentaron una demanda contra los Hogares Crea, la Cooperativa de Seguros Múltiples de Puerto Rico y el Sr. Raúl Torres Morales (en adelante Hogares Crea) por los daños y perjuicios sufridos como consecuencia de un accidente automovilístico. La demanda se presentó en el Tribunal de Primera Instancia, Sala Superior de Humacao y el caso se vio ante el entonces Juez Superior, Hon. Carlos Soler Aquino.

El 1 de agosto de 1997 el Juez Soler Aquino dictó sentencia declarando con lugar la demanda. La sentencia fue oportunamente apelada ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), tanto por la parte demandante como por la parte demandada. El 28 de junio de 1999 el Tribunal de Circuito dictó sentencia mediante la cual remitió el caso al foro de instancia para que éste determinase y concediese el monto correspondiente a las deducciones que se exigen por la Ley de Protección Social por Accidentes de Automóviles; le impusiese honorarios de abogado por temeridad a los demandados; y celebrase "una vista evidenciaria para determinar la suma a serle concedida a Jorge Andrés por concepto de menoscabo en su potencial de generar ingresos." En cuanto a los demás

---

[5] También se incluyó como demandante a Eugenia Santana Negrón, abuela paterna de los menores Jorge Andrés y Luis Fernando Cosme Rivera.

aspectos confirmó la sentencia recurrida.[6]  Oportunamente, tanto los demandantes como los demandados solicitaron reconsideración.  El 29 de octubre el Tribunal de Circuito emitió una resolución mediante la cual reconsideró la sentencia que había emitido, a los únicos fines de indicar que el tribunal de instancia no tenía que celebrar vista evidenciaria para determinar la suma a serle concedida al demandante Jorge Andrés por concepto del menoscabo en su potencial de generar ingresos.  Además, redujo varias de las cuantías concedidas por daños.

En la segunda página de esta Resolución el Tribunal de Circuito hizo constar lo siguiente:

> Sin lugar a dudas, nadie posee conocimiento del expediente del presente caso ante instancia, sus pormenores y circunstancias como el Juez Soler Aquino.  Esto lo hace la persona idónea para atender los diferentes asuntos que hemos expresado en la parte dispositiva de nuestra sentencia por lo que, preferiblemente, debe ser él quien los atienda, salvo criterio en contrario.  **Quedará a discreción del Juez Administrador del referido foro designar a quien entienda para atender nuestra sentencia.** (Énfasis suplido.)

Así las cosas, el caso fue devuelto al Tribunal de Primera Instancia, Sala Superior de Humacao, donde se le asignó al Juez Superior Luis A. Amorós Álvarez.  El 30 de noviembre de 1999, éste emitió la siguiente orden:

> Se refiere a la atención del propio Juez Soler Aquino por considerarlo de su competencia ya que fue él el que entendió en el caso.

Copia de esta orden se le remitió al Juez Soler Aquino quien para ese entonces había sido nombrado Juez del

---

[6]  Esta sentencia fue notificada el 1 de julio de 1999.

Tribunal de Circuito y fungía como tal. Sin embargo, no se le envió el expediente del caso ni hubo una designación por parte del Juez Presidente, ya fuere directa o indirectamente, del Juez Soler Aquino para entender nuevamente en el caso. El expediente permaneció en la Sala Superior de Humacao donde originalmente el Juez Administrador le había asignado el caso al Juez Superior Amorós Álvarez. El 29 de diciembre de 1999 la parte demandante presentó una moción mediante la cual solicitó se reconsiderase la orden de referir el caso al Juez Soler Aquino y se determinase lo que se estimase apropiado en justicia. A esta solicitud la parte demandada se opuso y a su vez solicitó se remitiese el expediente del caso al Juez Soler Aquino. Nada comentó sobre la falta de designación oficial, por el Juez Presidente o un delegado suyo, del Juez Soler Aquino para entender nuevamente en el caso a nivel del foro de instancia.

El 13 de enero de 2000 el tribunal de instancia por voz del Juez Amorós Álvarez señaló la moción de reconsideración y la oposición a la misma para vista que se celebraría el 23 de marzo de 2000. Esta resolución se notificó el 27 de enero de 2000. Del expediente no surge que las mociones antes mencionadas y la Resolución señalando para vista se le hubiesen notificado al Juez Soler Aquino. Dos días antes de la notificación de la Resolución señalando para vista la moción de reconsideración, o sea, el 25 de enero de 2000, el Juez Soler Aquino, actuando como juez de instancia en el caso,

emitió una resolución mediante la cual determinó que "el menoscabo del potencial de Jorge Andrés de generar ingresos [era] de $150,000.00" y condenó a la parte demandada a pagar $12,000.00 en honorarios de abogado. Esta Resolución se notificó el 9 de febrero de 2000. El 2 de marzo de 2000 la parte demandada recurrió ante el Tribunal de Circuito planteando la comisión de dos errores:

> 1. Erró el Hon. Carlos Soler Aquino, Juez de apelaciones, al emitir, sin jurisdicción ni competencia, una resolución en el tribunal de instancia, estando sujeta aún de decisión, una moción de reconsideración por instancia y señalada para vista.

> 2. En la alternativa, incidió el Hon. Carlos Soler Aquino [al] evaluar en la suma de $150,000.00 el menoscabo para generar ingresos habiendo ausencia de pruebas sobre [el] grado de incapacidad permanente alguna y, asimismo condenar a la parte demandada al pago de $12,000.00 por concepto de honorarios de abogados, cuya suma es excesiva.

El 14 de febrero de 2001 el Tribunal de Circuito emitió sentencia mediante la cual confirmó el dictamen apelado. En cuanto a si el Juez Soler Aquino podía o no actuar como juez de instancia bajo las circunstancias de este caso, el Tribunal de Circuito determinó que no tenía que entrar a resolver este planteamiento, pues este error había sido renunciado. Entendió, entre otras cosas, que el tribunal de instancia tenía facultad para resolver el asunto que le fue referido al Juez Soler Aquino, independientemente de que hubiese un previo señalamiento de la moción de reconsideración, ya que se trataba de un solo tribunal, el Tribunal de Primera Instancia, aunque fueran jueces distintos los que emitieran cada una de las

resoluciones en el mismo caso. Consideró el Tribunal de Circuito que una vez el Juez Soler Aquino resolvió el caso en los méritos convirtió en académica la moción de reconsideración sobre la orden refiriéndole el caso que se encontraba pendiente ante el Juez Amorós Álvarez.

Con relación al planteamiento en los méritos, el tribunal apelativo confirmó en su totalidad el dictamen emitido por el Juez Soler Aquino.

El 23 de marzo de 2001 la parte demandada presentó ante nosotros recurso de certiorari planteando los mismos errores que había traído ante la consideración del Tribunal de Circuito. Decidimos revisar y expedimos el recurso.

## II. EL PODER JUDICIAL Y LA ADMINISTRACIÓN DE LOS TRIBUNALES

La Constitución del Estado Libre Asociado de Puerto Rico dispone en su Artículo V, Sección 1, que el Poder Judicial de Puerto Rico se ejercerá por el Tribunal Supremo y por aquellos otros tribunales que se creen por ley, siendo el Tribunal Supremo el único tribunal constitucional. Por ley se han creado, el Tribunal de Circuito, un tribunal apelativo intermedio pluripersonal o sea, colegiado, con competencia primordialmente apelativa, Art. 4.002 Ley de la Judicatura de Puerto Rico de 1994, según enmendada, Plan de Reorganización de la Rama Judicial, Núm. 1, 28 de julio de 1994, 4 L.P.R.A. sec. 22k, y el Tribunal de Primera Instancia, un tribunal unipersonal, con competencia general en casos en primera

instancia.[7]  Arts. 5.001 y 5,003, Ley de la Judicatura de Puerto Rico de 1994, supra.  Dentro del Tribunal de Primera Instancia operan los Jueces Superiores cuya competencia en primera instancia es una general y los Jueces Municipales, que tienen una competencia limitada.  Ley de la Judicatura de Puerto Rico de 1994, supra; Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, Cap. 5, Secs. 501 y 502, pág. 34, Michie, 1997.

En nuestro sistema judicial, el juez es "la persona constituida con autoridad pública para administrar justicia el que ejerce la jurisdicción con arreglo a las leyes, conociendo y dirigiendo el procedimiento de causas civiles y criminales y dictando sobre ellas las sentencias que estime procedentes."  Hernández Colón, supra, Cap.7, Sec. 702, pág. 59.  Claro está, la ordenada y eficiente administración del sistema judicial requiere que un juez actúe sólo en aquellos casos que le sean asignados o sometidos a su consideración, directa o indirectamente, por el Juez Presidente que es la persona en quien la Constitución ha delegado la administración de los tribunales. Art. V, Sec. 7, de la Constitución.

La Sección 2 del Artículo V de la Constitución dispone que "[l]os tribunales de Puerto Rico constituirán un **sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración.**"  En otras

---

[7]  La Sección 2 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[l]a Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con

palabras, Puerto Rico constitucionalmente está constituido en un solo distrito judicial. "La Asamblea Legislativa no puede variar el principio de unidad jurisdiccional del sistema." <u>Lausell Ducós</u> v <u>A.C.A.A.</u>, 111 D.P.R. 593, 595-596 (1981). "[L]a Constitución restringió el poder de la Asamblea Legislativa a determinar la competencia de los tribunales, no su jurisdicción." <u>Ramírez</u> v <u>Registrador</u>, 116 D.P.R. 541, 548 (1985). Con relación al **concepto tribunal unificado**, el Ex-Juez Presidente del Tribunal Supremo, Hon. José Trías Monge, expresó lo siguiente: "Dentro de la **teoría de un sistema unificado, cualquier parte del sistema tiene jurisdicción para resolver una causa**. El volumen de trabajo, no obstante se distribuye mediante reglas flexibles de competencia." Trías Monge, José, <u>Sistema Judicial de Puerto Rico</u>, Cap. XII, sec. 6, pág. 136, Editorial Universitaria, P.R., 1978.

La Comisión de la Rama Judicial de la Convención Constituyente en el Informe que rindió a la Convención, expresó que recomendaba la creación de un tribunal unificado para asegurar, entre otras cosas, que se eliminarían los problemas técnicos jurisdiccionales que plagaban al sistema y dificultaban la obtención de justicia en los tribunales. Entendía la Comisión que la unificación en la administración aseguraría el logro de los siguientes objetivos: (1) mayor eficiencia en el ejercicio del poder judicial; (2) una distribución equitativa del trabajo de las cortes, lo que permitiría que hubiera una mayor rapidez

excepción del Tribunal Supremo, y determinará **su**

en los procedimientos judiciales evitando así la congestión de la resolución de las causas que se encuentran pendientes en los tribunales: y (3) una mayor flexibilidad en la administración de la justicia. Diario de Sesiones de la Convención Constituyente de Puerto Rico, Tomo 4, 28 de noviembre de 1951, pág. 2613, Edición 1961.

La **jurisdicción** de un tribunal es la facultad que éste tiene para decidir un caso o incidente dentro de un caso. Esta facultad la ejerce el tribunal a través de un juez. De otra parte, la **competencia** son las normas preestablecidas mediante ley o reglamento que regulan la ordenada tramitación de los casos o asuntos a través de los tribunales y/o de las diferentes Salas de un tribunal. La Regla 3 de Procedimiento, establece las normas o criterios generales para determinar la competencia de las diferentes salas del tribunal de instancia. Por ejemplo, la competencia territorial en los pleitos que afecten una propiedad inmueble; sitio donde se originó la causa de acción; la residencia de las partes; y la cuantía envuelta. También hay otros estatutos y normas administrativas que determinan la competencia de un tribunal a base de la materia de que se trate el caso y pueden haber estatutos o reglas especiales que designen una sala en particular para atender un tipo particular de caso. La competencia es pues, la forma en que se ejerce la jurisdicción de los tribunales distribuyendo el trabajo judicial entre los

---

**competencia y organización.**"

distintos tribunales y salas. Hernández Colón, <u>supra</u>, Cap.5, Sec. 505, pág. 36.

En nuestro sistema unificado, hay **un solo Tribunal de Primera Instancia** que a su vez está dividido territorialmente en salas, las cuales también podrán estar divididas por materia y/o cuantía. Si una parte presenta un caso en una sala que no tiene competencia para verlo, el tribunal motu proprio puede trasladarlo a la sala con competencia, la otra parte también tiene derecho a solicitar el traslado del caso a un foro competente. Salvo las excepciones prescritas por ley o reglamento, si una parte presenta su caso en una sala con competencia, tiene derecho a que sea allí donde se vea el mismo. Ahora bien, "no se desestimará ningún caso por razón de haberse sometido a una sala sin competencia." Regla 3.1 de Procedimiento Civil.

Sin embargo, lo antes expuesto no significa que una parte tienen derecho a que un juez en particular sea el que vea su caso. Es el Juez Presidente o la persona o personas en quien éste delegue, el que distribuye la carga judicial entre los distintos jueces componentes del sistema, asignando a cada juez una sala en particular y luego asignando los casos que se verán en esa sala. También puede optar por asignarle un caso o un incidente en particular dentro de un caso a un juez determinado. Esto, por ejemplo, ocurre usualmente en los caso de litigación múltiple o litigación compleja. <u>Vives Vázquez</u> v <u>E.L.A.</u>, 142 D.P.R. 117 (1996). Un juez, salvo delegación o

autorización expresa del Juez Presidente, no tiene autoridad o facultad para asignarle o referirle un caso o un incidente dentro de un caso a otro juez. Un juez sólo puede ejercer su autoridad judicial en los casos que le han sido asignados, directa o indirectamente, por el Juez Presidente.

La Sección 7, del Artículo V de la Constitución le concede la facultad constitucional de dirigir la administración de los tribunales al Juez Presidente del Tribunal Supremo. También le da facultad para nombrar un director o directora administrativo(a). Según expresáramos anteriormente, el Juez Presidente puede delegar su facultad de administrar en otros funcionarios, como por ejemplo, en la Directora Administrativa de los Tribunales, los Jueces o Juezas Administradores y Subadministradores, entre otros. Dicha Sección a su vez le concede al Tribunal Supremo la facultad de adoptar reglas para la administración de los tribunales.

En el Informe de la Comisión de la Rama Judicial de la Convención Constituyente con relación al término "administración" se hizo constar que según éste se utiliza en la Sección 7, "comprende, sin que se entiendan excluidas otras similares y análogas, las siguientes funciones: "(6) Asignar y trasladar jueces" y "(8) superentender [supervisar] en los tribunales." Diario de Sesiones de la Convención Constituyente de Puerto Rico, supra, pág. 2613.

El juez es el que ejercerá el poder judicial y resolverá los casos y asuntos que se presenten ante los

tribunales, pero para poder ejercer este poder tiene que haber una previa designación o asignación directa del Juez Presidente o de la persona en quien éste delegue. Véase, Regla 3 Reglas de Administración. Todo esto se hace en cumplimiento del mandato constitucional que le concede al Juez(a) Presidente(a) la autoridad para administrar el sistema judicial.

El Juez Presidente asignará a un juez a atender una Sala en el tribunal de instancia, y éste será el juez que entienda y resuelva los casos y asuntos que sean asignados a esa Sala. Cualquier cambio de sala o de juez tendrá que ser autorizado por la persona designada por el Juez Presidente para ejercer estas facultades y funciones administrativas. No estamos ante un problema de competencia, sino de administración. Se trata de la distribución de la carga de trabajo entre los componentes del sistema judicial. La Constitución le ha asignado la facultad de administrar al Juez(a) Presidente(a), y salvo delegación expresa por parte de éste, cualquier intento de ejercerlo carece de validez.

## III. LA APLICACIÓN DE LAS NORMAS DE DERECHO A LOS HECHOS

En su opinión la mayoría expresa "que el mero hecho de que el juez en cuestión hubiese sido el magistrado del foro de instancia quien dictó la sentencia a ser modificada en el caso de autos, de ningún modo lo autorizaba para llevar a cabo la modificación referida cuando dicho juez ya no

pertenecía al Tribunal de Primera Instancia."[8] Explicamos.

Realmente, la razón para que el Juez Soler Aquino no pudiese intervenir en el caso en esta etapa de los procedimientos, no era el hecho de que ya no pertenecía al Tribunal de Primera Instancia, sino porque no se le había asignado dicho caso por el Juez Presidente o alguna persona designada por él. Aunque el Juez Soler Aquino hubiese continuado siendo juez de instancia, no podía intervenir en el caso nuevamente sin la antes mencionada asignación o autorización. El Juez Amorós Álvarez no tenía la autoridad para asignar y referir el caso a juez alguno. La autoridad para asignar el caso a un juez de instancia había sido delegada por el Juez Presidente al Juez Administrador Regional de Humacao.

Continúa exponiendo la mayoría que "[e]l foro con competencia para realizar la modificación de la sentencia aludida era únicamente ese Tribunal de Primera Instancia del cual el juez en cuestión [Soler Aquino] no formaba parte ya. Ausente una designación expresa para tal fin del Juez Presidente del Tribunal Supremo estaba impedido de participar de nuevo en el caso como si aún fuese un juez

---

[8] Sobre este particular, la Regla 64 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone:

> Si por razón de muerte, enfermedad, o por cualquier otra razón, un juez no pudiere continuar entendiendo en un asunto, otro juez podrá actuar en su lugar; pero si éste se convenciere de que no puede desempeñar dichos deberes, sin la celebración de un nuevo juicio sobre todos o parte de los hechos o sin oír nuevamente a algún testigo, podrá tomar las medidas

del foro de instancia. Sencillamente, ya no era juez de ese foro. Su segunda intervención en el caso de autos fue, pues, totalmente carente de la autorización necesaria para ello." Aunque coincidimos con la conclusión de la mayoría antes citada, consideramos prudente abundar un poco más sobre la misma y así despejar cualquier duda al respecto. Así pues, no se trata de una falta de competencia, ya que el tribunal competente era precisamente el Tribunal de Primera Instancia, Sala Superior de Humacao, el mismo que resolvió finalmente el caso atendiendo el mandato del Tribunal de Circuito. El problema era que el juez que pretendió atender el mandato del Tribunal de Circuito de modificación de la sentencia, el Juez Soler Aquino, no tenía facultad para ello, pues ni el Juez Presidente ni una persona delegada por éste le habían asignado el caso para que atendiera este incidente. Cabe destacar que la mayoría hace hincapié en el hecho procesal de que cuando el Juez Soler Aquino resolvió el caso modificando la sentencia, había pendiente una moción de reconsideración sobre la orden dictada por el Juez Amorós Álvarez refiriendo el caso al Juez Soler Aquino. La moción de reconsideración había sido acogida (considerada) y señalada para vista. Ahora bien, el que estuviera pendiente y acogida la moción de reconsideración, no le impedía al tribunal de instancia, a través de un juez debidamente designado para atender el caso, reconsiderar motu proprio tácitamente sus actuaciones anteriores y dejar sin efecto la vista señalada y atender

que fueren necesarias para resolver el

el mandato de modificación en los méritos, según lo hizo el Juez Soler Aquino.

Estamos de acuerdo con la mayoría en que "[e]l hecho de que constitucionalmente se hayan eliminado las diferencias **jurisdiccionales** entre los distintos componentes del Tribunal General de Justicia no significa que cada juez de dicho Tribunal tiene carta blanca para ejercer su ministerio en cualquier caso."

En resumen el problema en el caso de autos es uno de administración, no de competencia. La prerrogativa constitucional de administrar los tribunales le corresponde al Juez Presidente quien la puede ejercer directamente o indirectamente delegando en otras personas. Parte importante de esta facultad de administrar es la de asignar los jueces a las distintas salas que han quedado constituidas por demarcación territorial y/o materia o cuantía; y luego asignar a estas salas los casos que serán atendidos por estos jueces. Según indicamos anteriormente, el Juez Presidente, puede además asignarle a cualquier juez del sistema un caso en particular o algún incidente dentro de un caso. El Juez designado puede ser un Juez o Jueza del Tribunal de Circuito o del tribunal de instancia, ya fuere Juez Superior o Municipal, dependiendo del criterio administrativo del Juez Presidente sobre las necesidades del servicio que presta la Rama Judicial.

Los jueces sólo pueden actuar en aquellos casos que le fueren debidamente asignados. La norma citada por el

---

pleito.

Tribunal de Circuito de que el juez que preside un juicio en el foro unipersonal de instancia debe participar hasta el final en el caso en el que presidió en el juicio, resulta ser uno de los criterios que aquellos que administran el sistema tomarán en consideración al asignar los diferentes incidentes que se susciten en el mismo.

Por las razones antes expuestas entendemos que ni el Juez Amorós Álvarez tenía facultad para referirle el caso de autos al Juez Soler Aquino, ni este último tenía facultad para resolver el incidente de la modificación. La facultad constitucional de asignar el caso le correspondía y sólo la podía ejercer el Juez Presidente. Esto lo podía hacer directa o indirectamente. En el caso de autos la ejerció indirectamente cuando el Juez Administrador Regional, Centro Judicial de Humacao, asignó el incidente de la modificación a la Sala Superior donde se desempeñaba, previa designación oficial, el Juez Superior Amorós Álvarez. Éste, sin embargo, sin autorización del Juez Presidente pretendió ejercer las prerrogativas constitucionales del Juez Presidente, refiriéndole el caso al Juez Soler Aquino para que éste atendiera el incidente de la modificación en los méritos. Esta actuación no tuvo el efecto de facultar al Juez Soler Aquino a entender en el caso nuevamente. Sin autorización previa de la persona que tiene la prerrogativa constitucional de asignar casos a jueces, a tenor con la facultad de administrar que le otorga la Constitución, el Juez Soler Aquino no tenía ni facultad ni poder judicial para resolver el mandato del

Tribunal de Circuito sobre la modificación de la sentencia. Cualquier determinación sobre este particular resultaba nula.


Miriam Naveira de Rodón
Jueza Asociada